[No. A100102. First Dist., Div. Three. Aug. 29, 2003.]

DAVID FURIA, Plaintiff and Appellant, v.
HUGH N. HELM III, Defendant and Respondent.

**COUNSEL**

John Jack Mavredakis for Plaintiff and Appellant.

Victor C. Thuesen for Defendant and Respondent.

## Opinion

**POLLAK, J.**—Plaintiff David Furia, doing business as Furia Construction Company,[1] appeals from an adverse judgment entered after the court sustained without leave to amend the demurrer of defendant Hugh N. Helm III to Furia's second amended complaint. The amended complaint alleged causes of action for legal malpractice and fraudulent misrepresentation and concealment, arising out of an agreement by Helm, an attorney representing Furia's construction clients, to attempt to mediate differences between Furia and his clients. Although we have some misgivings about the manner in which Helm accepted dual responsibilities, we agree with the trial court that Furia has failed to allege facts entitling him to relief,[2] and we therefore affirm.

### Background

Furia was a licensed general contractor who, in 1998, was hired by Laurie and Larry Levin (the Levins) to remodel their Windsor home. Disputes arose after work had commenced, and the Levins went to their attorney, Helm, for advice. Following some discussions, Helm agreed to attempt to help resolve the differences. Although Furia characterized the role Helm agreed to play somewhat differently in each of his three complaints, Furia attached as an exhibit to each of the complaints a copy of Helm's letter of November 5, 1998, sent to both the Levins and Furia to confirm their understanding. Because much of the argument turns upon a characterization of what Helm agreed to do, we set forth that letter in full:

"I am writing to set forth our understanding regarding my role in this matter, and assure all of you that I intend to use my best efforts to resolve your differences efficiently, in a manner that honors each of your concerns. Thank you in advance for the opportunity to assist in constructively dealing with this situation before matters become intractable.

"As we discussed, I represent Laurie and Larry in this matter. However, in an effort to cost effectively come to terms, I will initially meet with Dave and his superintendents at his office to review the plans and listen to their concerns. Laurie has asked that my fees for this meeting be paid by David, and David has agreed. My usual hourly rate is $150.00 plus out of pocket expenses.

---

[1] Although this is the fictitious name used in all pleadings in the superior court and in this court, it appears that the correct business name is Furia Construction and Home Repair.

[2] In view of this determination, it is unnecessary to consider Helm's additional contention that Furia's complaint is barred by the statute of limitations. We note, however, that although Helm has presented this issue by means of a cross-appeal challenging the trial court's failure to sustain his demurrer on this ground, the contention is simply an alternative argument in support of the judgment and is not the proper basis for a cross-appeal.

"After that, all of us will meet and attempt to devise a plan for the timely completion of the project by November 28, 1998, and reach an understanding regarding responsibility for expenses that have been incurred. Because David has asked that I attempt to fairly mediate your differences (rather than advocate for Laurie and Larry), and I have said I am willing to try, Laurie has asked at this meeting that the parties equally divide my fees for these meetings and related follow ups. Please advise if this is agreeable by all concerned.

"After having spoken with all of you, I am confident that this approach will succeed, but from an abundance of caution I must state for the record, so there is no misunderstanding, that if an agreement is not reached, and an adversarial posture is taken by either party, that my loyalty lay with Laurie and Larry, and I may assume their representation in subsequent proceedings.

"On the other hand, with that disclosure in mind, please be assured that as long that we all continue to agree to work cooperatively, that I will do my very best to listen to all sides equally, and offer ideas and a perspective that respects the needs and interests of all concerned. All of you have told me that you want to be, and will be, fair and flexible, and do the right thing. My hope is that we can build on that attitude, and bring this matter to a conclusion satisfactory to each of you.

"Thank you again for the opportunity to assist, and if you have any questions or wish to discuss anything, do not hesitate to call. By the time you receive this, a meeting with Dave will be scheduled and we will be on our way."

Unbeknownst to Furia, Helm at the same time sent the Levins a second letter,[3] also incorporated in each of the complaints, which reads as follows:

"Enclosed is the letter I have sent to you and Dave regarding our arrangements. I believe it makes adequately clear to Dave that I represent you and that I am not going to be truly neutral during our efforts to negotiate an

---

[3] The Levins in their earlier action against Furia inadvertently produced this letter. The Levins successfully moved for a protective order in that action. The superior court there found that the letter was privileged and that its inadvertent production had not waived the attorney-client privilege. Furia was ordered to return the document and was "prohibited from introducing, relying on, or referencing the document[] at any time, in any proceeding." (*Levin v. Adams Roofing et al.* (Super. Ct. Sonoma County, 2003, No. SCV-221991 [minute order dated Aug. 22, 2001].) Although Helm asserts that Furia's use of this letter violates the court's order in that action, it appears that he did not move to strike the letter from any of the complaints in this action and that the letter and the references to it were considered by the trial court in ruling on the demurrer that is now before this court on appeal. The second amended complaint alleges that the Levins subsequently waived their attorney-client privilege with Helm.

agreement. So, please feel free to contact me to discuss anything, and be assured that I will not disclose any communications between us that are expected to be confidential. As the joint letter indicates, my ordinary rates are $150.00 plus out of pocket expenses. I will send itemized bills to you monthly, for services, which we agree are your exclusive responsibility, and send a separately prepared bill that will go to Dave for payment or partial payment. This approach will avoid Dave knowing what I may be doing on your behalf. [¶] If you have any questions, please do not hesitate to call anytime."

In his original complaint, Furia alleged that the Levins retained Helm "to act as their attorney," and that Helm had "agreed to discontinue his advocacy on behalf of the Levins" and had "represented and agreed to use his best efforts to fairly mediate and resolve the differences existing between" Furia and the Levins. He further alleged that Helm had secretly agreed with the Levins that he "would not be truly neutral," that he breached his professional and ethical obligations in failing to disclose to Furia "that he was continuing to act as an advocate for the Levins in the mediation," and that "[i]n rendering the mediation services ... Helm failed to exercise reasonable care and skill and negligently advised, encouraged and persuaded [Furia] to abandon the construction/remodel project and assured [Furia] that abandonment of the project was the best course of action to resolve the dispute between [Furia] and the Levins." In reliance on this advice, the complaint alleged that Furia "withdrew from the construction/remodel project," which "intensified the dispute and provided the Levins with a strategic advantage. Following plaintiff's withdrawal from the construction/remodel project, the Levins initiated civil and administrative proceedings against [Furia] for the alleged wrongful abandonment of the project requiring [Furia] to retain attorneys and expend money to defend himself from such claims."

Following the trial court's order sustaining general and special demurrers to this complaint, Furia filed a first amended complaint. In this pleading, Furia deleted the allegation that the Levins had retained Helm as their attorney and alleged that "[Furia] and the Levins jointly retained defendant Helm to act as a mediator and to advise both parties with respect to settlement. Defendant Helm orally and in writing agreed that he would fairly mediate the parties' differences (rather than advocate for the Levins) and would listen to all sides equally and offer ideas and a perspective that would honor and respect the needs, concerns and interests of both parties." The first amended complaint added the allegation that on November 6 Helm billed Furia for "professional services" for his November 5 meeting with Furia. Like the original complaint, the amended pleading alleged Helm's failure to disclose that he was not truly neutral, that Furia had relied on Helm's advice to withdraw from the project, and that he was damaged in the manner described in the original complaint. The trial court again sustained Helm's

general demurrer, with leave to amend, explaining that the cause of action for legal malpractice failed to allege "sufficient cognizable facts showing that there was actually any attorney-client relationship as between" Furia and Helm, and that the cause of action for misrepresentation failed to plead "with particularity, all of the essential elements of fraud, to wit, damages."

In his second amended complaint, Furia characterized the arrangement with Helm as follows: "[Furia] retained and employed defendant Helm to provide legal advice and services to [Furia].... Helm agreed to meet with [F]uria and to provide [Furia] with legal advice on how to resolve the dispute with the Levins." The allegations that Helm concealed he was "secretly acting as an advocate for the Levins and would not be truly neutral," that Furia withdrew from the project in reliance on Helm's advice, and that he consequently suffered unspecified damages[4] remained essentially the same as in the prior pleadings. This time, the court sustained Helm's general demurrer without leave to amend, explaining that "[e]ven though [Furia] now alleges that [Helm] actually was the attorney for [Furia], this new allegation is both inconsistent and contradictory with [Furia]'s earlier pleadings" and therefore was properly disregarded. As to the misrepresentation cause of action, the court explained: "For the third time [Furia] does not sufficiently plead the element of damages. [Furia] simply asserts that he was required to expend money to defend himself when the Levins turned around and sued him after he followed Helm's advice.... [Furia] states that damages are in an amount 'according to proof'.... [Furia] needs to plead an amount of damages."

In support of Helm's several demurrers, and without objection, Helm requested the trial court to take judicial notice of documents filed in the Levins' suit against Furia and in the disciplinary proceedings before the Contractors' State License Board to which reference was made in Furia's complaints. The Levins' complaint against Furia and many of his subcontractors asserted several causes of action based on numerous alleged construction deficiencies, but the complaint contained no allegation that Furia had abandoned the project. The cross-complaint filed by Furia in the Levins' action

---

[4] The damage allegations in the malpractice cause of action were, in full, as follows: "As a result of defendant Helm's non-disclosure, [Furia] has suffered damages in an amount according to proof and in excess of the minimum jurisdictional limits of this Court. In this connection, [Furia]'s withdrawal from the construction project provided the Levins with a defense to [Furia]'s claim for payment, subjected [Furia] to claims that he failed to remedy defective workmanship[,] subjected [Furia] to administrative disciplinary proceedings requiring [Furia] to retain attorneys and expend monies in defense of the civil and administrative proceedings."

The allegation of damages in the misrepresentation cause of action, in full, is as follows: "As a proximate result of the fraudulent conduct of defendant Helm as herein alleged, [Furia] was placed in a strategic disadvantage in defending the civil lawsuit filed by the Levins and was subjected to administrative disciplinary proceedings requiring [Furia] to retain attorneys and expend money in defending such actions."

alleged, among other things, that the Levins had retained another contractor (Finley) to complete the remodeling project and that in November 1998, Furia "confirmed that LEVIN choose [*sic*] another contractor (FINLEY) to complete the remodeling project although FURIA offered to return and complete the project upon payment of monies due and owing from LEVIN." The decision of the Contractors' State License Board, following a hearing before an administrative law judge on the Levins' complaint to the board, found that Furia had "performed in a substantially incompetent manner" in both the administration of the project and in failing to meet trade standards for the work performed, specifying a lengthy list of construction deficiencies on the job. The board revoked Furia's license and ordered him to pay $86,239 in restitution to the Levins as a condition to the reinstatement of his license. However, after reciting the "murky" circumstances surrounding the attempts to resolve the controversy, including the efforts of Helm to mediate the dispute, the board found that it had not been proven that Furia abandoned the project.

Upon sustaining Helm's demurrer to the second amended complaint without leave to amend, the court entered judgment in Helm's favor, from which Furia has timely appealed.

DISCUSSION

1. *The Cause of Action for Legal Malpractice Does Not Fail for Lack of an Attorney-Client Relationship.*

In sustaining Helm's demurrer to the first cause of action, the trial court appears to have reasoned that Helm could not be liable for legal malpractice in the absence of an attorney-client relationship, and that Furia was bound by the allegations in his original complaint that Helm was not his attorney. We do not believe that the sufficiency of the cause of action can be dismissed so easily.

Despite Furia's attempts in his later pleadings to assert that Helm agreed to provide him with "legal advice," we agree with the trial court that from Furia's original complaint and from the November 5, 1998 letter to both Furia and the Levins, which is incorporated in all of the pleadings, it is established that Helm did not undertake to act as Furia's attorney or to provide him legal counsel. (*Colapinto v. County of Riverside* (1991) 230 Cal.App.3d 147, 151–152 [281 Cal.Rptr. 191] [court may disregard allegations inconsistent with original complaint]; 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 419, pp. 514–515.) That letter plainly disclosed that Helm was the Levins' attorney, and Furia's original complaint alleged that Helm was the attorney not for himself but for the Levins. Indeed, in his briefing to

this court, Furia states, "To be clear, it is not alleged that Helm was the attorney for Furia." Furia's appellate brief continues, somewhat inconsistently, with the assertion that he "has consistently alleged ... that a contractual relationship existed between he [*sic*] and Helm whereby Helm agreed to provide legal advice (on how to resolve the dispute with the Levins) and services (as a mediator) to Furia." While Helm's letter and Furia's allegations make clear that Helm agreed to act as a mediator, which might involve suggesting possible compromises, such a role does not encompass rendering legal advice. (Cal. Dispute Resolution Council, Stds. of Practice for Cal. Mediators (hereafter CDRC Standards), std. 3;[5] American Arbitration Assn. and ABA, Model Stds. of Conduct for Mediators (hereafter Model Standards), Preface & Comment to § VI.[6]) Neither the November 5 jointly addressed letter nor the allegations of the initial complaint are consistent with the suggestion that Helm, as the mediator, agreed to provide Furia with legal advice.

Hence, it is correct to conclude that an attorney-client relationship did not arise between Helm and Furia, so that Helm did not owe Furia the obligations of a fiduciary. That is not to say, however, that as an attorney agreeing to act as a neutral mediator for the conflicting parties, Helm did not assume duties to both of them.[7] "Actionable legal malpractice is compounded of the same basic elements as other kinds of actionable negligence: duty, breach of duty,

---

[5]Standard 3 of the CDRC Standards reads in part as follows: "In an attempt to reach an informed, voluntary agreement, appropriate Mediator behavior may include, but is not limited to, providing information about the process, addressing obstacles to communication, assisting the participants in defining the issues, providing impartial substantive information, exploring alternatives for resolution, and building the capacity of the parties to make an informed decision.... [¶] Mediation is not the practice of law. A Mediator may generally discuss a party's options including a range of possible outcomes in an adjudicative process. At the parties' request, a Mediator may offer a personal evaluation or opinion of a set of facts as presented, which should be clearly identified as such. [¶] A Mediator should not give any participant legal or other professional advice...."

[6] The preface of the Model Standards reads in part: "Mediation is a process in which an impartial third party—a mediator—facilitates the resolution of a dispute by promoting voluntary agreement (or 'self-determination') by the parties to the dispute. A mediator facilitates communications, promotes understanding, focuses the parties on their interests, and seeks creative problem solving to enable the parties to reach their own agreement...." A comment to section VI, on the "quality of the process," reads in part: "The primary purpose of a mediator is to facilitate the parties' voluntary agreement. This role differs substantially from other professional-client relationships. Mixing the role of a mediator and the role of a professional advising a client is problematic, and mediators must strive to distinguish between the roles. A mediator should, therefore, refrain from providing professional advice...."

[7] We have no occasion here to consider whether there was such an inconsistency between the obligations Helm retained as attorney for the Levins and the obligations he assumed by his agreement to serve as a neutral mediator that he should not have accepted, or have been permitted to accept, these dual responsibilities. (Cf. *Flatt v. Superior Court* (1994) 9 Cal.4th 275, 286 [36 Cal.Rptr.2d 537, 885 P.2d 950]; *Woods v. Superior Court* (1983) 149 Cal.App.3d 931, 936 [197 Cal.Rptr. 185]; *Klemm v. Superior Court* (1977) 75 Cal.App.3d 893, 898 [142

proximate cause, damage. [Citations.] Touching the first element, duty, the general rule is that 'the attorney, by accepting employment to give legal advice *or to render other legal services,* impliedly agrees to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake.' " (*Ishmael v. Millington* (1966) 241 Cal.App.2d 520, 523 [50 Cal.Rptr. 592], italics added.)

Whether or not the label Furia affixed to the first cause of action ("Legal Malpractice") was entirely accurate, the pleading did sufficiently allege facts establishing the existence of a duty owed by Helm to Furia. We need not explore the full dimensions of that duty, but certainly the duty encompassed disclosing to Furia any facts that reasonably might cause Furia to believe that Helm would not or could not be impartial. ▉ In agreeing to act as neutral mediator, Helm did not assume the duties of Furia's attorney, but he did assume the duty of performing as a mediator with the skill and prudence ordinarily to be expected of one performing that role. While rule 3-310(C) of the Rules of Professional Conduct[8] may not be strictly applicable, we have no doubt that an attorney accepting the role of mediator has the same duty of full disclosure as an attorney accepting the representation of clients with actual or potentially conflicting interests. (Model Standards, std. III ["A Mediator shall Disclose all Actual and Potential Conflicts of Interest Reasonably Known to the Mediator"]; CDRC Standards, § 2; cf. Cal. Rules of Court, rule 1620.5(b) [disclosure of matters potentially affecting impartiality by mediators in court-connected mediation programs].)

Mediators may not provide legal advice, but they are in a position to influence the positions taken by the conflicting parties whose dispute they are mediating. One of the principal roles of the mediator is to help the parties understand the other's position and find a resolution acceptable to both. (See fns. 5, 6 at p. 953, *ante.*) "The mediator's role is simply to *facilitate* the parties' direct negotiations," but "this is not a hard and fast rule. Many mediators do in fact offer their opinions." (Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 1992) ¶¶ 3:120, 3:121, p. 3–24.14 (rev. # 1 2002).) A party to mediation may well give more weight to the suggestions of the mediator if under the belief that the mediator

---

Cal.Rptr. 509].) The only pertinent issue in this case is whether Helm breached any obligations he may have assumed towards Furia.

[8] Rule 3-310(C) of the Rules of Professional Conduct provides, "A member shall not, without the informed written consent of each client: (1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or (2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict ...." Informed written consent may occur only after written disclosure and " 'Disclosure' means informing the client ... of the relevant circumstances and of the actual and reasonably foreseeable adverse consequences to the client...." (Rule 3-310(A)(1), (2).)

is neutral than if that party regards the mediator as aligned with the interests of the adversary. ■ For the same reasons that full disclosure is necessary before an attorney may represent divergent interests, before an attorney agrees to serve for compensation as a mediator, there must be "complete disclosure of all facts and circumstances which, in the attorney's honest judgment, may influence [the party's] choice, holding the attorney civilly liable for loss caused by lack of disclosure." (*Ishmael v. Millington, supra,* 241 Cal.App.2d at pp. 526–527.)

Furia's amended complaint thus alleged facts establishing the existence of a duty on the part of Helm, and it alleged as well the breach of that duty. We need not decide whether the November 5, 1998 letter sent to both parties, standing alone, was sufficient to disclose the existing attorney-client relationship between Helm and the Levins and the possibility that despite his best efforts, Helm might nonetheless be partial to their interests.[9] In that letter he did assure Furia that he would "do [his] very best to listen to all sides equally." Yet, in a second letter to the Levins, he represented, "I am not going to be truly neutral during our efforts to negotiate an agreement" and he made arrangements for communications relating to the mediation that would be concealed from Furia. ■ Assuming that the attorney for one party to a dispute can ever properly agree to act as a mediator in attempting to resolve that dispute, certainly the full understanding of the responsibilities the attorney will perform should be set out unambiguously in a common writing to both parties, with no undisclosed side understandings with one of them. The amended complaint sufficiently alleges that Helm did not fully and fairly disclose to Furia that he did not intend to be entirely impartial as a mediator, and in fact misrepresented his intentions, and in that respect breached the duty to exercise reasonable care that he assumed towards Furia.

The cases cited by Helm for the proposition that an attorney representing one party has no duty to protect the interests of adverse parties are inapposite. (*Flatt v. Superior Court, supra,* 9 Cal.4th at pp. 290–291; *Schick v. Lerner* (1987) 193 Cal.App.3d 1321, 1329–1331 [238 Cal.Rptr. 902] ["An attorney generally will not be held liable to a third person not in privity of contract with him since he owes no duty to anyone other than his client"]; *Fox v. Pollack* (1986) 181 Cal.App.3d 954, 960–962 [226 Cal.Rptr. 532].) Helm assumed obligations to Furia not because Helm was representing the Levins, but because Helm entered an express agreement with Furia to serve as a mediator in his controversy with the Levins. We reiterate that we do not here determine whether, consistent with his obligations to the Levins, Helm

---

[9] Nor do we decide whether this letter sufficiently explained to the Levins the inconsistency between serving as their attorney and acting as a neutral mediator, and that by agreeing temporarily to refrain from advocating on their behalf he would not be discharging obligations he owed them as their attorney.

properly could agree to serve as a neutral mediator. (See fn. 7 at pp. 953–954, *ante*.) The fact is that he did so agree and, having done so, he assumed certain obligations to those he agreed to serve.

## 2. *The Amended Complaint Fails to Allege Recoverable Damage Under Either Cause of Action.*

The trial court sustained Helm's demurrers to the second cause of action, for fraudulent misrepresentation and concealment, on the ground that Furia failed adequately to allege damages from the fraud. Since we have concluded that Furia sufficiently pleaded a duty and breach of duty under the first cause of action, the sufficiency of both causes of action turns upon the sufficiency of the allegations of causation and damages. Both causes of action rest upon the claim that Helm failed to disclose to Furia the extent of his partiality to the Levins when he agreed to serve as a mediator of their dispute. In all three versions of his complaint, Furia alleged that because of his ignorance of Helm's true loyalties, he relied on Helm's advice that he abandon the construction project as the best means of resolving the dispute. Furia's withdrawal from the project is the sole causal link alleged to give rise to damages, in the form of prejudicing his position in litigation with the Levins and in disciplinary proceedings before the Contractors' State License Board, and in putting him to the expense of defending before the board the accusation that he had abandoned the project.

Initially, Furia's failure to ascribe a dollar amount to these elements of damage was not fatal to his pleading. ■ Generally, "[f]raud actions are subject to strict requirements of particularity in pleading." (*Nagy v. Nagy* (1989) 210 Cal.App.3d 1262, 1268 [258 Cal.Rptr. 787].) Every fact constituting the fraud must be alleged, and the policy of liberal construction will not ordinarily be invoked to sustain a defective pleading. (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 216 [197 Cal.Rptr. 783, 673 P.2d 660].) "[F]raud without damage is not actionable" because it fails to state a cause of action. (*Billings v. Farm Development Co.* (1925) 74 Cal.App. 254, 259 [240 P. 298].) In *Billings*, the plaintiff failed to allege not only a specific dollar amount, but also any harm caused by the fraud. "There is no specific allegation of injury ... and nothing from which injury might be inferred." (*Ibid.*) Similarly, in *Nagy*, the court held that "[a]n allegation of a definite amount of damage is essential to stating a cause of action" (*Nagy v. Nagy, supra*, 210 Cal.App.3d at pp. 1268–1269), but the court also found that the complaint did not state "a cause and effect relationship between the fraud and damages sought" (*id.* at pp. 1269–1270). Here, although Furia's amended complaint fails to state a specific dollar amount of damages, the pleading does allege two types of damage caused by his reliance on Helm's advice: Furia was "placed in a strategic disadvantage

in defending the civil lawsuit filed by the Levins and was subjected to administrative disciplinary proceedings requiring [him] to retain attorneys and expend money in defending such actions." The allegation that Furia was "placed in a strategic disadvantage" we agree is too conclusory and indefinite to suffice. However, the allegation that Furia was put to the expense of defending the charge of abandonment describes in a meaningful way the manner in which Furia was damaged by his reliance on Helm's advice. This allegation was sufficient to overcome a general demurrer despite the absence of the exact amount of attorney fees incurred in defending against this accusation.

Although a complaint "shall contain ... [a] demand for judgment for the relief to which the pleader claims to be entitled," including the amount of damages demanded (Code Civ. Proc., § 425.10, subd. (a)(2).), the specific dollar amount is necessary only when a default judgment is to be entered. The purpose of such a requirement is to ensure that the defendant is sufficiently aware of the consequences of not answering the complaint. (*Janssen v. Luu* (1997) 57 Cal.App.4th 272, 279 [66 Cal.Rptr.2d 838].) However, "in any other case, the court may grant the plaintiff any relief consistent with the case made by the complaint and embraced within the issue." (Code Civ. Proc., § 580, subd. (a).) Hence, the absence of a specific amount from the complaint is not necessarily fatal as long as the pleaded facts entitle the plaintiff to relief. (See *Hunter v. Freeman* (1951) 105 Cal.App.2d 129, 133 [233 P.2d 65]; *Hoffman v. Pacific Coast Const. Co.* (1918) 37 Cal.App. 125, 129–130 [173 P. 776].)

Nonetheless, there is a fatal flaw in Furia's complaint with respect to the issue of causation. As indicated above, the sole causal link alleged between Helm's breach of duty and damage to Furia is Furia's alleged abandonment of the remodeling project in reliance on Helm's advice. Absent the abandonment, there is no respect in which Helm's failure to fully disclose his loyalties is alleged to have caused Furia any harm. There may well be merit in Helm's contention that because Furia did know that Helm was the Levins' attorney, any reliance he placed on Helm's recommendation was, as a matter of law, unjustifiable. (*B.L.M. v. Sabo & Deitsch* (1997) 55 Cal.App.4th 823, 838–839 [64 Cal.Rptr.2d 335]; *Wilhelm v. Pray, Price, Williams & Russell* (1986) 186 Cal.App.3d 1324, 1331–1332 [231 Cal.Rptr. 355].) However, the more fundamental problem is that Furia has previously alleged that he did *not* abandon the project and, following a contested administrative hearing, the evidence was found insufficient to establish such abandonment.

In asserting cross-claims in the action brought against him by the Levins, Furia expressly alleged that he did not abandon the Levins' remodeling project. When disciplinary proceedings were brought against him before the Contractors' State License Board, Furia denied that he abandoned the project

and he ultimately prevailed with respect to that contention. Yet, the capstone of his damage claim is that in reliance on Helm's advice he "withdrew" from the project. This reversal in position is precluded by the doctrine of judicial estoppel. " 'Judicial estoppel is designed to maintain the purity and integrity of the judicial process by preventing inconsistent positions from being asserted.' " (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 182 [70 Cal.Rptr.2d 96].) It is " ' "an equitable doctrine aimed at preventing fraud on the courts." ' " (*Thomas v. Gordon* (2000) 85 Cal.App.4th 113, 118 [102 Cal.Rptr.2d 28]; *Drain v. Betz Laboratories, Inc.* (1999) 69 Cal.App.4th 950, 956 [81 Cal.Rptr.2d 864].) Although not all of these elements are always necessary, the doctrine generally applies "when ' "(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake." ' " (*Thomas v. Gordon, supra,* at p. 118, quoting *Drain v. Betz Laboratories, Inc., supra,* at p. 957 & *Jackson v. County of Los Angeles, supra,* at p. 183.)

The only reason Furia contends that this doctrine does not apply here is that the allegations of his complaint are not truly inconsistent with the position he took in the earlier proceedings. He argues that even though he prevailed on the abandonment issue before the Contractors' State License Board, as a result of his reliance on Helm's advice he was nonetheless put to the expense of defending that issue before the board. The point, however, is that under Furia's allegations in this action, Furia suffered damage only because he followed Helm's advice and withdrew from the project. Before the board, however, he asserted that "he continued to try to work on the project until he was replaced."[10] If he did not withdraw from the project but was instead replaced by the Levins, he did not rely on Helm's advice as he has alleged here, and he suffered no damages as a result of misunderstanding Helm's true allegiance. Having successfully asserted in the prior proceedings that he did not withdraw, he may not reverse his position in order to support

---

[10] According to the decision of the State Contractors' License Board, Furia "was adamant that he did not and never would have, abandoned the Levin project. Despite all of the problems, he continued to try to work on the project until he was replaced. He was credible in this respect." The board's legal conclusions on this issue were as follows: "Cause for license discipline does not exist pursuant to Business and Professions Code ... section 7107, as it was not proven that [Furia] abandoned the Levin project. [¶] The circumstances surrounding the conclusion of [Furia]'s work on the Levin job are somewhat murky. It is clear that [Furia] was seriously concerned about continuing to work on the job, as he had not been paid the amount he felt was due. However, he was receiving mixed signals from the homeowners. [Furia] willingly engaged in negotiations, called 'mediation' by their lawyer, and was awaiting the results. He was then replaced. All things considered, there was insufficient evidence to overcome [Furia]'s assertion that he was willing, ready and able to continue to work on the project." (Fn. omitted.)

the claims he asserts in this action. The expenses that Furia incurred in defending the accusation that he abandoned the project were not caused by his reliance on Helm's advice, because he did not rely on Helm's advice.[11]

Thus, based on a somewhat different analysis, we reach the same conclusion as did the trial court. Although Helm allegedly concealed from Furia the fact that he did not intend to be neutral when attempting to mediate the dispute, Furia may not now reverse himself and claim that at Helm's suggestion he withdrew from the remodeling project, and he has alleged no other causal link for his asserted damages. Having had two opportunities to amend his complaint, he has failed to allege facts entitling him to relief. Accordingly, the general demurrer to the second amended complaint was properly sustained without leave to amend.

DISPOSITION

The judgment is affirmed.

Corrigan, Acting P. J., and Parrilli, J., concurred.

A petition for a rehearing was denied September 24, 2003, and on September 10, 2003, the opinion was modified to read as printed above.

---

[11] The doctrine of collateral estoppel may also apply to preclude Furia from asserting that he abandoned the project. Although this doctrine is normally invoked to prevent a party from relitigating an issue previously decided adversely to that party, the elements necessary to invoke the doctrine are present here. Collateral estoppel "bars a party to an action ... from subsequently relitigating issues actually litigated and finally decided against it in an earlier action." (*United States Golf Assn. v. Arroyo Software Corp.* (1999) 69 Cal.App.4th 607, 615 [81 Cal.Rptr.2d 708].) "[A] non-party may invoke collateral estoppel against a party to a prior action only if three conditions are met: (1) the issue necessarily decided in the prior action is *identical* to the issue sought to be relitigated in the current action; (2) there was a final judgment on the merits in the previous action; and (3) the party against whom collateral estoppel is asserted was a party, or in privity with a party, to the previous suit." (*Id.* at p. 616.) Collateral estoppel prevents a party "who has had his day in court" from relitigating "identical issues by merely switching adversaries." (*Bernhard v. Bank of America* (1942) 19 Cal.2d 807, 813 [122 P.2d 892].) Decisions by administrative boards can be as conclusive as the judgments of a court of general jurisdiction. (*City and County of San Francisco v. Ang* (1979) 97 Cal.App.3d 673, 679 [159 Cal.Rptr. 56].) In the proceedings before the Contractors' State License Board, Furia was accused of having abandoned the project at the Levins' house. Following a full evidentiary hearing in which Furia was a party, the board found that this claim had not been established and its decision has become final. Thus, the elements necessary for a collateral estoppel are satisfied.