[No. B196898. Second Dist., Div. Six. Sept. 30, 2008.]

CRAIG WOOD, as Trustee, etc., Plaintiff and Respondent, v.
EDDIE B. JAMISON, Defendant and Appellant.

COUNSEL

J. J. Little & Associates and James J. Little for Defendant and Appellant.

Steinmeyer Roth, William B. Steinmeyer and Thomas M. Roth for Plaintiff and Respondent.

OPINION

**GILBERT, P. J.**—An attorney represents an elderly client and does not disclose his conflict of interest and its consequences. As this case demonstrates, the attorney brings financial harm to his client, institutional harm to his profession, and catastrophic harm to himself.

Eddie B. Jamison, a licensed attorney, appeals a judgment for damages, attorney fees and costs based on legal malpractice, breach of fiduciary duty and financial abuse of an elder, entered after a court trial. We affirm.

## FACTS

Donald and Merle Peterson had been married for 55 years. A few months prior to the incidents leading to this lawsuit, the Petersons' only child died and Donald Peterson moved into an Alzheimer's facility.

Shortly after her son's death and her husband's move to the Alzheimer's facility, Merle Peterson (Peterson), then 78 years old, met Patrick McComb. McComb told Peterson he was her nephew. In fact, he was not related to her. Over the next few weeks, McComb convinced Peterson to transfer approximately $174,000 to him in a series of transactions. McComb also convinced Peterson, in her capacity as trustee of the Peterson trust, to obtain a $250,000 loan secured by her primary residence. McComb told Peterson that the money would be invested in a nightclub joint venture.

Jamison was representing McComb in the joint venture. He also performed legal services for Peterson. The services included meeting with Peterson and McComb in his office to discuss financing of the nightclub; locating the lender for Peterson's loan; advising Peterson about various lenders; selecting the lender; gathering documents necessary to close the loan; completing the loan application; transmitting documents under cover of his letterhead; communicating with the lender and title company; reviewing loan documents; and attending the loan escrow closing with Peterson.

The loan escrow closed in October 2002. Investment Management Company (Investment) was the lender. The loan bore interest at an annual percentage rate of 18.41 percent. Jamison received a $4,000 referral fee from Investment from the loan proceeds. Jamison received an additional $10,000 from the loan proceeds as repayment of a loan he had made to McComb. The entire net proceeds of the loan were distributed directly to McComb.

Jamison did not inform Peterson, or any other party to the loan transaction, that he was not acting as her attorney. Jamison did not disclose the $4,000 referral fee or the $10,000 loan repayment to Peterson. He did not provide Peterson with conflict disclosures or waivers. Nor did he refer Peterson to independent counsel.

Jamison was aware that Peterson was elderly, and that her husband was incompetent. Jamison did not advise Peterson of the risks of the nightclub investment or that the loan terms were inappropriate for her. He did not refer her to an accountant or financial advisor.

Peterson could not afford the loan and defaulted on the first payment. Investment initiated foreclosure proceedings.

Peterson died in November 2002. In May 2003, Craig Wood, as successor trustee of the Peterson trust and executor of her estate, brought this action against McComb, Jamison, Investment, Ira Boren as owner of Investment, and others. McComb did not answer the complaint or otherwise appear.

The trial court stayed Investment's foreclosure proceedings pending the outcome of the case. Wood and Investment settled the foreclosure case prior to trial. Investment reconveyed the mortgage in exchange for a payment of $118,322.23, representing interest on the loan. The trial court approved the settlement as entered in good faith.

The matter proceeded to a court trial against Jamison. The trial court found Jamison committed malpractice, breached his fiduciary duty to Peterson and committed financial abuse of an elder as provided in Welfare and Institutions Code section 15610.30, subdivision (a).[1] The court awarded damages against Jamison in the amount of $122,322.23, consisting of the $118,322.23 Wood paid to Investment and the $4,000 finder's fee Jamison received from Investment. The trial court also awarded attorney fees pursuant to section 15657.5, subdivision (a).

---

[1] All statutory references are to the Welfare and Institutions Code unless stated otherwise.

## DISCUSSION

### I

Jamison contends the trial court erred in denying his motion for a new trial based on newly discovered evidence.

The alleged newly discovered evidence is a document that purports to reflect the bargain between McComb and Peterson for the formation of the nightclub. Jamison refers to the document as the "Key Club Agreement." A paragraph of the agreement provides, in part: "Waivers - Merle agrees that Eddie Jamison is solely Patrick's Attorney and that Merle will have this agreement reviewed by Independent Counsel before the loan closing in order to protect her interests. Merle agrees that if she hires Eddie Jamison to organize her estate, that Eddie Jamison would still first and foremost be Patrick's Attorney and that Patrick's interest comes first. Merle agrees to let Patrick have a third party Attorney review her retainer agreement with Eddie Jamison in the event she hires Eddie [Jamison] to organize her estate. Merle acknowledges that Eddie Jamison is representing Patrick's interest only pertaining to this Venture and that Merle will have this agreement reviewed by a third party Attorney before the loan signing that should happen in the next two weeks. Patrick agrees to waive any conflict of interest that arises in the future if Merle hires Eddie Jamison to organize her estate. Both parties agree that each of them have performed an independent investigation of all matters which are subject to this agreement or will have been considered to have chosen not to if not done before the loan closing. Each party represents that they have made an informed consent decision on every point contained within this agreement. . . ."

The agreement was purportedly signed by McComb and Peterson with Jeff Hoffman as a witness.

Jamison claims he received a copy of the agreement in the mail, approximately seven months after the close of trial, from an anonymous source. In support of the motion, Jamison submitted an affidavit from Jeff Hoffman declaring that McComb and Peterson signed the document in his office when they came to inquire about a loan on September 17, 2002. Jamison also submitted an affidavit by a questioned document expert who declared that, in her opinion, the signatures appear to be genuine.

In opposition, Wood challenged Jamison's attempt to authenticate the document. Wood also submitted an affidavit from his legal malpractice expert, who testified at trial, declaring the agreement would not have changed his opinion that Jamison committed malpractice and breached his fiduciary duty.

The trial court denied the motion, stating that the agreement is not material to the case.

■ The trial court may grant a new trial on the basis of newly discovered evidence where the moving party shows the evidence is newly discovered, reasonable diligence has been exercised in its discovery, and the evidence is material to the moving party's case. (Code Civ. Proc., § 657, subd. 4; *Sherman v. Kinetic Concepts, Inc.* (1998) 67 Cal.App.4th 1152, 1161 [79 Cal.Rptr.2d 641].) Here the trial court found the evidence was not material. In the context of a motion for a new trial, "material" means likely to produce a different result. (*Sherman, supra*, at p. 1161.)

Jamison cites *Sherman v. Kinetic Concepts, Inc., supra*, 67 Cal.App.4th at page 1160, for the proposition that we must make an independent determination whether an error in denying a motion for new trial was prejudicial. But *Sherman* involved a jury trial. In this case, trial was by the court. There is always some conjecture in determining whether newly discovered evidence was likely to produce a different result where the case was tried to a jury. No one can say with certainty what the jury might have thought about the evidence. But where, as here, the same trial court to which the case was tried determines the new evidence was unlikely to have made a difference, there is no conjecture. We simply have no basis for contradicting the trial court.

Indeed, the document came from an unknown source. There is no evidence as to the circumstances of its making. There is no showing Peterson had any legal advice about the complex matter of conflict of interest. Most importantly, Jamison's subsequent actions appear to belie the words of the agreement that Jamison does not represent Peterson. The evidence is anything but compelling.

This case is not like *Furia v. Helm* (2003) 111 Cal.App.4th 945 [4 Cal.Rptr.3d 357]. *Furia* was an appeal from a judgment after the trial court sustained the defendant's demurrer without leave to amend. The court determined the complaint did not allege the defendant was the attorney for the plaintiff. (*Id.* at pp. 952–953.) Here Wood alleged and proved that Jamison acted as Peterson's attorney.

## II

Jamison contends a new trial is required because of irregularity in the trial proceedings and attorney misconduct.

At trial, Wood's counsel asked him whether he was able to locate documents showing McComb's intent to repay Peterson. Wood answered, "No." After trial, Jamison discovered two checks from McComb to Peterson, totaling $27,900.

Wood points out that the checks Jamison discovered after trial were available to Jamison through pretrial discovery. Jamison, however, did not undertake such discovery.

██ A new trial may be granted for "[i]rregularity in the proceedings . . . by which either party was prevented from having a fair trial." (Code Civ. Proc., § 657, subd. 1.) The trial court's determination on a motion for a new trial will not be disturbed on appeal absent a showing of a manifest and unmistakable abuse of discretion. (*Christie v. City of El Centro* (2006) 135 Cal.App.4th 767, 781 [37 Cal.Rptr.3d 718].)

Here Jamison does not contest that he could have discovered pretrial the checks necessary to impeach Wood's testimony. Jamison argues, however, that his failure to discover the checks until after the trial is irrelevant because his motion is based on irregularity, and not newly discovered evidence.

But the time to present evidence is at trial. Jamison had a full and fair opportunity to discover the checks and to present them at trial. He fails to explain why he did not take advantage of the opportunity. Under the circumstances, the trial court could reasonably conclude that any irregularity did not prevent Jamison from having a fair trial. The court did not abuse its discretion in denying his motion for a new trial.

III

Jamison contends the finding of malpractice is not supported by substantial evidence.

"In viewing the evidence, we look only to the evidence supporting the prevailing party. [Citation.] We discard evidence unfavorable to the prevailing party as not having sufficient verity to be accepted by the trier of fact. [Citation.] Where the trial court or jury has drawn reasonable inferences from the evidence, we have no power to draw different inferences, even though different inferences may also be reasonable. [Citation.] The trier of fact is not required to believe even uncontradicted testimony. [Citation.]" (*Rodney F. v. Karen M.* (1998) 61 Cal.App.4th 233, 241 [71 Cal.Rptr.2d 399].)

Jamison argues the opinion of Wood's malpractice expert was based on facts from a deposition that was not admitted into evidence. He claims the only evidence of an attorney-client relationship between Jamison and Peterson was contained in the deposition of Ira Boren, the owner of Investment. He asserts the deposition was only lodged with the court. Jamison points out that an expert's opinion may not be based on an assumption of facts not in evidence. (Citing *Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 123 [59 Cal.Rptr.3d 618].)

But there is ample evidence other than Boren's deposition that Jamison acted as Peterson's attorney. Wood testified Jamison told him, "I'm attorney Eddie Jamison. I've done work for your aunt. Represented her in a business transaction." That alone is sufficient to support the finding of an attorney-client relationship. Moreover, even without such a statement, the work Jamison performed to obtain Peterson's loan is sufficient to support a finding that an attorney-client relationship existed. The parties stipulated that Jamison performed most of those acts. Jamison's reliance on the Key Club Agreement is misplaced. The agreement is not in evidence, and, as we explained, it would not compel a different finding even if it had been admitted.

■ The evidence of malpractice and breach of fiduciary duty is overwhelming. Jamison failed to advise Peterson of a conflict of interest; failed to advise Peterson the investment was not appropriate for her, or at least to refer her to an independent investment advisor; and obtained an undisclosed profit from the transaction.

## IV

Jamison contends the acts of malpractice found by the trial court were not the proximate cause of Peterson's damages.

Jamison's contention is based on the trial court's finding that the terms of the trust did not allow Peterson to enter into the refinancing transaction. Without citation to authority, Jamison asserts that Peterson's inability to encumber the trust property was a defense to foreclosure. Jamison believes the $118,322.23 Wood expended to settle the foreclosure action was a voluntary payment for which he is not liable.

■ But the lender has a defense under Probate Code section 18100.[2] That section protects third persons who deal with a trustee in good faith from claims the trustee has exceeded his or her powers under the trust.

Moreover, assuming Wood had a defense to foreclosure, Jamison cites no authority that Peterson, her estate or the trust would not be personally liable on the note, should the trust deed be declared void. If there is any legal

---

[2] Probate Code section 18100 provides: "With respect to a third person dealing with a trustee or assisting a trustee in the conduct of a transaction, if the third person acts in good faith and for a valuable consideration and without actual knowledge that the trustee is exceeding the trustee's powers or improperly exercising them: [¶] (a) The third person is not bound to inquire whether the trustee has power to act or is properly exercising a power and may assume without inquiry the existence of a trust power and its proper exercise. [¶] (b) The third person is fully protected in dealing with or assisting the trustee just as if the trustee has and is properly exercising the power the trustee purports to exercise."

theory under which Peterson could obtain $250,000 from a lender and escape all liability for repayment, Jamison fails to mention it.

■ In a transactional malpractice case, a plaintiff must show that, but for the malpractice, it is more likely than not, the plaintiff would have obtained a more favorable result. (*Viner v. Sweet* (2004) 117 Cal.App.4th 1218, 1224 [12 Cal.Rptr.3d 533].) Here the trial court found that had Jamison properly advised Peterson, it is more likely than not, the loan transaction would not have occurred. The trial court also found that Jamison's conduct forced Wood to protect Peterson's assets by defending the foreclosure proceedings. Contrary to Jamison's assertion, the money Wood paid to settle with the lender was not a voluntary payment.

## V

Finally, Jamison contends the evidence was insufficient to support an award of costs and attorney fees for violation of the Elder Abuse Act. (§ 15600 et seq.)

Section 15610.30 provides in part: "(a) 'Financial abuse' of an elder or dependent adult occurs when a person or entity does any of the following: [¶] (1) Takes, secretes, appropriates, or retains real or personal property of an elder or dependent adult to a wrongful use or with intent to defraud, or both. [¶] (2) Assists in taking, secreting, appropriating, or retaining real or personal property of an elder or dependent adult to a wrongful use or with intent to defraud, or both. [¶] (b) A person or entity shall be deemed to have taken, secreted, appropriated, or retained property for a wrongful use if, among other things, the person or entity takes, secretes, appropriates or retains possession of property in bad faith. [¶] (1) A person or entity shall be deemed to have acted in bad faith if the person or entity knew or should have known that the elder or dependent adult had the right to have the property transferred or made readily available to the elder or dependent adult or to his or her representative. [¶] (2) For purposes of this section, a person or entity should have known of a right specified in paragraph (1) if, on the basis of the information received by the person or entity or the person or entity's authorized third party, or both, it is obvious to a reasonable person that the elder or dependent adult has a right specified in paragraph (1)."

■ Section 15657.5, subdivision (a), provides for an award of costs and reasonable attorney fees to the prevailing plaintiff where the defendant has been found liable for financial elder abuse.

Here the trial court found Jamison committed financial elder abuse when he took the undisclosed finder's fee, McComb committed financial elder

abuse when he took the $174,000 from the Petersons' bank account and the $250,000 loan proceeds and that Jamison knowingly aided and abetted McComb's abusive scheme to take the $250,000.

Jamison argues there is no evidence that he knowingly assisted McComb in taking the $250,000 loan proceeds. But Jamison knew what the loan proceeds would be used for. Any attorney would know it was an inappropriate use of Peterson's funds.

In addition, Jamison took a $4,000 finder's fee. Jamison argues that the finder's fee was paid to him by the lender and was not Peterson's property. But the fee was paid through the loan proceeds. The loan proceeds were Peterson's property.

The judgment is affirmed. Costs are awarded to respondent.

Yegan, J., and Coffee, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 17, 2008, S168207.