[No. C056970. Third Dist. Apr. 7, 2010.]

THE SWAHN GROUP, INC., et al., Plaintiffs and Appellants, v. MALCOLM S. SEGAL et al., Defendants and Respondents.

COUNSEL

Freidberg & Parker, Edward Freidberg, Susanna V. Pullen and Wendy A. Taylor for Plaintiffs and Appellants.

Boyd & Kimball and David E. Boyd for Defendants and Respondents.

OPINION

**BLEASE, Acting P. J.**—This legal malpractice case tenders the doctrine of judicial estoppel, which precludes a party from taking inconsistent positions in separate proceedings where the position in the first proceeding was adopted by the court or accepted by it as true. (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 181 [70 Cal.Rptr.2d 96] (*Jackson*).) Judicial estoppel differs from collateral estoppel or equitable estoppel in that it is focused on the relationship between the litigant and the judicial system and not on the relationship of the parties. (*Id.* at p. 183.)

The issue arises in a malpractice action initiated by plaintiffs, The Swahn Group, Inc., Roger Swahn and Pamela Swahn (collectively, the Swahns) in which the trial court sustained the demurrer of defendants Malcolm S. Segal, James Kirby, and Segal & Kirby (collectively, S&K). S&K had represented plaintiffs as their attorneys in an action against Gary Tharaldson and his various business enterprises for breach of a contract to develop 20 hotels. On the advice of S&K the breach of contract action was settled. Plaintiffs changed attorneys and brought an action to rescind the settlement agreement. The rescission action resulted in a second settlement agreement which was not incorporated in a judgment. This action was then filed claiming that S&K committed malpractice in the initial breach of contract action. Defendants filed a demurrer, which the trial court sustained, and the court then dismissed the malpractice action.

The primary basis for the trial court's ruling was that plaintiffs were judicially estopped to pursue this action because positions critical to their malpractice claims were totally inconsistent with positions taken by them in the rescission action. The trial court found that the Swahns could not claim that their attorneys were negligent in advising a settlement of the initial action and also claim to have been fraudulently induced to settle by Tharaldson.

The rescission action resulted in a settlement agreement between plaintiffs and Tharaldson and his business enterprises. The only evidence of the terms of the settlement is the Swahns' allegation in the malpractice complaint

against S&K that S&K ultimately resolved all disputes with Tharaldson by way of a settlement which involved payments to members of plaintiffs' family and the granting of a petition to approve the compromise of the claim of Trevor Swahn, a minor. The order granting the petition is not in the record, and the summary of the case submitted to the trial court for a minor's compromise does not mention the Swahns' allegations of fraud and concealment against Tharaldson et al., but states only that Tharaldson "refused to perform under the terms of the purported settlement and refused to execute formal settlement documentation . . . ."

We shall conclude that the requirements for judicial estoppel were not met since the trial court did not adopt the claims advanced by plaintiffs in the settlement of the rescission action that conflict with claims advanced in this action.

We shall reverse the judgment of dismissal.

## FACTUAL AND PROCEDURAL BACKGROUND

This appeal arises after the trial court sustained S&K's demurrer to the legal malpractice complaint. Accordingly, the facts we review are those alleged in the malpractice complaint together with the materials it incorporates, the materials noticed by the trial court, and the actions taken by the trial court.[1]

Underlying both this action and the rescission action was a development contract dispute between the Swahns and one of Tharaldson's companies. S&K acted as the Swahns' attorney in the dispute, which resulted in an arbitration proceeding. One of the grounds for the rescission action was that Tharaldson fraudulently induced the Swahns to sign the settlement agreement by misrepresenting the terms of the agreement. The Swahns also alleged that Tharaldson, or certain of his corporations, made material misrepresentations that led the Swahns to pursue an unnecessary arbitration.

### A. The Development Contract

The legal malpractice complaint alleges that in 1996, the Swahns entered into a contract with C&G Development, Inc. (C&G), a corporation owned and operated by Tharaldson. Under the terms of the contract, the Swahns agreed to assist in the construction of 20 hotels over a five-year period, in exchange for a payment of $50,000 per hotel plus a 9½ percent ownership interest in each hotel. The Swahns' percentage interest in each hotel was

---

[1] Respondents' request for judicial notice is granted.

to be 50 percent vested on the date the hotel opened for business, and 100 percent vested on the date all 20 hotels were completed. The contract contained a binding arbitration provision.

After the Swahns and C&G entered into the development contract, 19 separate corporations were created to own and operate each hotel. These corporations were not signatories to the development contract. We shall refer to them as the hotel corporations.

Without the Swahns' knowledge, C&G filed articles of dissolution in 2000. In 2001, Tharaldson attempted to terminate the development contract on the ground the five-year time period set forth in the contract for the construction of 20 hotels had expired.

### B. Development Contract Litigation

The Swahns hired S&K to advise them regarding the contract dispute with Tharaldson. S&K, on the Swahns' behalf, filed a complaint for breach of the development contract against C&G and other Tharaldson-owned entities, including the hotel corporations. S&K objected to Tharaldson's demand for arbitration, but the trial court ordered C&G and the Swahns, but not the hotel corporations, to arbitration.

The arbitration was divided into two phases—liability and damages. In phase one of the arbitration the arbitration panel ruled in the Swahns' favor against C&G. The arbitration panel deferred the issue of the culpability of any defendants other than C&G to the second phase of the arbitration.

### C. Settlement of Development Contract Litigation

Phase two of the arbitration proceeding was never held because the parties entered into mediation, which resulted in a settlement agreement. A handwritten settlement agreement gave the Swahns a 6 to 10 percent interest in 16 of the hotel corporations, $150,000 in cash, and a loan in an amount totaling nearly $2 million. The agreement was signed by Tharaldson in his individual capacity, as well as his capacity as president of C&G, president of Tharaldson Development Company, and president of the 16 hotel corporations in which the Swahns were to have an ownership interest. The settlement agreement contained a provision that any dispute concerning the documentation of the agreement would be resolved by the mediator.

### D. Action to Rescind Settlement Agreement

The Swahns then changed attorneys. Approximately six months after substitution of counsel, the Swahns sent Tharaldson a notice of rescission of

the settlement agreement. The notice asserted that the dispute concerned the Swahns' understanding that loan repayments would be made from dividends, as opposed to Tharaldson's view that both distributions and dividends would be security for the loans. The grounds stated for rescission were mutual mistake of fact and fraud in the inducement. The Swahns claimed that Tharaldson's interpretation of the settlement agreement was "concealed from Swahn's counsel [(S&K)] and the mediator by Tharaldson and their counsel." The Swahns contended that "these representations and concealments by Tharaldson to [the mediator] and to their counsel were fraudulent."

Thereafter, the Swahns, represented by current counsel, filed a complaint for rescission and damages against Tharaldson, various Tharaldson-related corporations, and the hotel corporations. The action sought to rescind the handwritten settlement agreement.

The rescission complaint alleged that the defendants who were not parties to the development contract "stated in writing to the arbitrators during the arbitration and before the Phase I interim award that they were . . . voluntarily appearing in the arbitration." It also alleged that as a part of a continuing plan and scheme on the part of Tharaldson and the other defendants to defraud the Swahns, "DEFENDANTS who were not signatories to the Hotel Development Contract [the hotel corporations] intended to walk a legal tight rope by leading PLAINTIFFS to believe that they were appearing in the arbitration but, if the arbitration award was against them, planned to recant and renege on their voluntary appearance claiming that they were not bound by the arbitration decision. And in fact, after the PLAINTIFFS' resounding victory in the Phase I liability decision, some of the DEFENDANTS suddenly claimed that they had not appeared and were not bound by the decision against them."

The rescission complaint also alleged there was a "lack of the meeting of the minds regarding the source of the repayment of the settlement 'loans.' PLAINTIFFS insisted that the settlement 'loans' would be repaid from corporate dividends *only*; THARALDSON contends that the Handwritten Purported Agreement provides that the settlement 'loans' may be repaid from hotel sales proceeds as well as dividends." The rescission complaint alleged there was an inconsistency in the repayment terms of the loan because one paragraph stated that the Swahns would assign all dividends/distributions to Tharaldson Financial as security for the loans and another paragraph stated that the " 'loan will be repaid only out of any dividends declared' " by the hotels.[2]

---

[2] The complaint explained the importance of this inconsistency as follows: "If security for the settlement 'loans' is both dividends and other distributions, such as proceeds from the sale of a hotel, then THARALDSON will be able to substantially reduce PLAINTIFFS' interest in

The trial court ordered the dispute over the settlement agreement back to the mediator, pursuant to the terms of the settlement agreement. The case was subsequently settled for a payment to the Swahns of approximately $6 million. Prior to the settlement, the initial breach of contract action on the development agreement was dismissed by the court for failure to prosecute.

### E. *Malpractice Litigation*

The legal malpractice complaint states causes of action in professional negligence, breach of contract, breach of fiduciary duty, and fraud.[3]

In particular the malpractice complaint alleges S&K was negligent when it (1) failed to ascertain C&G's true corporate standing prior to filing the development contract complaint, (2) told the Swahns they could not pursue their claims against the hotel corporations because the court had ordered them to arbitration, (3) failed to secure an agreement that the hotel corporations or Tharaldson would appear at the arbitration voluntarily and be bound by any award, (4) failed to seek reconsideration to clarify that the hotel corporations had voluntarily agreed to appear in the arbitration, (5) disclosed the Swahns' financial arrangements with S&K to Tharaldson, and (6) abandoned the Swahns.

S&K demurred to the complaint and took judicial notice of a petition to compromise a minor's claim involving the allocation of payments made pursuant to the settlement, a matter we discuss in detail later. S&K argued the

---

the HOTELS by refusing to pay any dividends, thereby keeping the balance owed on the loan payments unreduced and compounding interest at the prime rate as of January 1st of each year. . . . The end result of is [*sic*] the settlement 'loans' will balloon into sums owing that exceed the value of PLAINTIFFS' stock ownership in the hotels, and then at that point THARALDSON will be able to sell the hotels and deprive PLAINTIFFS of their equity interests therein.

"If, on the other hand, the 'loan' repayment is from dividend payments only, then THARALDSON will have incentive to declare the dividends to pay down the settlement 'loans', rather than wrongfully withholding dividends from PLAINTIFFS thereby reducing PLAINTIFFS equity ownership in the HOTELS by the ballooning principal obligations resulting from the compounding of interest, as compared to PLAINTIFFS reasonable expectation when they entered into the Handwritten Purported Agreement."

[3] The causes of action for breach of contract to perform the duties of an attorney competently, breach of fiduciary duty of an attorney to his clients, and fraud involving clients, are also grounds of malpractice. Where the ground of malpractice is the failure properly to draft an instrument the client may sue in contract or in tort. Where, as here, "a case sounds in both tort and contract, the plaintiff will ordinarily have freedom of election between the two actions." (*Lucas v. Hamm* (1961) 56 Cal.2d 583, 589, fn. 2 [15 Cal.Rptr. 821, 364 P.2d 685]; see also *Perry v. Robertson* (1988) 201 Cal.App.3d 333, 335 [247 Cal.Rptr. 74].) The distinction is of no importance in this case because the doctrine of judicial estoppel is applicable whether the case sounds in tort or contract. (See *International Billing Services, Inc. v. Emigh* (2000) 84 Cal.App.4th 1175, 1186 [101 Cal.Rptr.2d 532].)

doctrine of judicial estoppel prevented the Swahns from taking the position in this action that the arbitration was unnecessary and meaningless, when in the prior rescission action they claimed to have won a resounding victory. S&K argued that the Swahns could not argue that S&K negligently advised them to settle when it claimed in the rescission action that its attorneys were the victims of Tharaldson's fraud. S&K also demurred for failure to allege causation and for uncertainty.

The trial court sustained the demurrer to the entire complaint on the ground of judicial estoppel. The trial court explained its ruling as follows:

"The Swahns' complaint for professional negligence, breach of fiduciary duty and fraud is based on the allegation that Segal & Kirby's prosecution of the arbitration against C&G was negligent because it was 'unnecessary' and 'meaningless' because Segal & Kirby failed to pursue the hotel corporations. . . .

"Judicial estoppel focuses on the relationship between the litigant and the judicial system . . . . The doctrine should apply when: (1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake. [Citation.]

"A settlement in some instances may be equivalent to winning a judgment for purposes of applying judicial estoppel. The pivotal issue is whether it can be established that the party succeeded in the first position or that the position was a basis or important to the settlement. [Citation.]

"In this malpractice action, the Swahns assert that Segal & Kirby pursued an 'unnecessary' and 'meaningless' arbitration in the liability phase, and then negligently or fraudulently induced plaintiffs to enter into a mediated settlement agreement, resulting in an inadequate recovery to their clients. In the prior rescission action (05AS04401) the Swahns alleged that they obtained a 'resounding victory' in the arbitration Phase 1 liability decision. . . .

"In this action, plaintiffs allege that Segal & Kirby 'pressured' and 'cajoled' plaintiffs into settling. In the prior action, where the notice of rescission is incorporated by reference, plaintiffs assert that the fraud was perpetrated against both the Swahns' counsel (Segal & Kirby) and the mediator. . . .

"In the mediation, Segal & Kirby cannot be both fraudulently deceived, and negligent in advising the Swahns to settle. The two positions are

inconsistent, are both taken in judicial proceedings by the same party, and are irreconcilable. . . ."

The trial court also sustained the demurrer on the grounds of failure to allege causation and uncertainty.

## DISCUSSION

### I

### Judicial Estoppel

The doctrine of judicial estoppel precludes a party from taking inconsistent positions in separate judicial proceedings. (*Jackson, supra*, 60 Cal.App.4th at p. 181.) It " ' "is invoked to prevent a party from changing its position over the course of judicial proceedings when such positional changes have an adverse impact on the judicial process. . . . 'The policies underlying preclusion of inconsistent positions are "general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings." ' . . . Judicial estoppel is 'intended to protect against a litigant playing "fast and loose with the courts." ' " ' [Citation.] 'It seems patently wrong to allow a person to abuse the judicial process by first [advocating] one position, and later, if it becomes beneficial, to assert the opposite.' (Comment, *The Judiciary Says, You Can't Have It Both Ways: Judicial Estoppel—A Doctrine Precluding Inconsistent Positions* (1996) 30 Loyola L.A. L.Rev. 323, 327 . . . .)" (*Ibid.*)

Judicial estoppel differs from equitable estoppel in that equitable estoppel is focused on the relationship between the parties, whereas judicial estoppel is focused on the relationship between the litigant and the judicial system. (*Jackson, supra*, 60 Cal.App.4th at p. 183.) " '[E]quitable estoppel requires privity, reliance, and prejudice because the doctrine concentrates on the relationship between the parties to a specific case. Conversely, none of these elements is or should be required under the judicial estoppel doctrine. . . . The gravamen of judicial estoppel is not privity, reliance, or prejudice. Rather, it is the intentional assertion of an inconsistent position that perverts the judicial machinery.' [Citations.]" (*Ibid.*)

Judicial estoppel differs from collateral estoppel in that judicial estoppel does not require a final judgment. (*Jackson, supra*, 60 Cal.App.4th at p. 182.) The doctrines also differ in that collateral estoppel deprives a party of

the right to relitigate an issue, whereas judicial estoppel deprives a party of the right to assert a particular position. (*Ibid.*) The purposes of the two doctrines differ in that collateral estoppel is designed to " 'conserve judicial resources by preventing repetitive litigation,' " while judicial estoppel " 'maintain[s] the purity and integrity of the judicial process by preventing inconsistent positions from being asserted.' " (*Ibid.*)

In *Jackson, supra,* 60 Cal.App.4th at page 183, the court set forth the following five requirements for the application of judicial estoppel: "(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake." (See also *Aguilar v. Lerner* (2004) 32 Cal.4th 974, 986–987 [12 Cal.Rptr.3d 287, 88 P.3d 24].)

II

Application of Judicial Estoppel on Demurrer

The Swahns first argue that the doctrine of judicial estoppel may be applied only at a factfinding stage because the court must evaluate the facts before it can exercise its discretion to apply the doctrine. Thus, they argue, the trial court erred in applying the doctrine at the demurrer stage.

The Swahns find some support for this position in *Cloud v. Northrop Grumman Corp.* (1998) 67 Cal.App.4th 995, 1000–1001 [79 Cal.Rptr.2d 544]. In that case a terminated employee filed for chapter 7 bankruptcy protection. She later brought a wrongful termination and sexual harassment action against her former employer, but had not disclosed any such claim in her bankruptcy action. (*Id.* at pp. 998–999.) The trial court granted the defendants' motion for judgment on the pleadings in part on the ground that the employee was judicially estopped from pursuing her claim. (*Id.* at p. 1000.) In reversing the trial court, the Court of Appeal stated: "a defense of judicial estoppel raises factual issues. (See, e.g., *Ryan Operations G.P.* v. *Santiam-Midwest Lumber Co.* (3d Cir. 1996) 81 F.3d 355.) These factual issues could not be decided solely by reviewing plaintiff's complaint and matters that could be judicially noticed, and hence could not be decided on a motion for judgment on the pleadings." (*Id.* at p. 1000.)

In particular, the court held that nondisclosure in bankruptcy filings, standing alone, was insufficient to support a finding of bad faith intent, which was necessary in that context to satisfy the fifth element of judicial estoppel—absence of ignorance, fraud, or mistake. (*Cloud v. Northrop Grumman Corp., supra,* 67 Cal.App.4th at p. 1019.) Accordingly, the court concluded that there was evidence which could negate the findings necessary to support the application of judicial estoppel (i.e., the debtor could have "made a mistake born of misunderstanding, ignorance of legal procedures, lack of adequate legal advice, or some other innocent cause," rather than "engaged in a deliberate scheme to mislead and gain unfair advantage"). (*Id.* at p. 1020.) Thus, the trial court should not have decided the issue on a motion for judgment on the pleadings. (*Ibid.*)

However, the application of judicial estoppel tenders a question of fact only if a determination of fact is necessary to make a ruling on the claim. (*Kelsey v. Waste Management of Alameda County* (1999) 76 Cal.App.4th 590, 597 [90 Cal.Rptr.2d 510].) If the facts material to a determination of judicial estoppel are undisputed, a question of law is presented. (*International Engine Parts, Inc. v. Feddersen & Co.* (1998) 64 Cal.App.4th 345, 354 [75 Cal.Rptr.2d 178]; *Drain v. Betz Laboratories, Inc.* (1999) 69 Cal.App.4th 950, 959, fn. 8 [81 Cal.Rptr.2d 864].) Since we must accept as true facts that are properly pleaded, and must consider those facts of which judicial notice may be taken (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569]), these facts are undisputed. We may decide the issue of judicial estoppel if such facts indicate the doctrine should be applied on demurrer.

Thus we are not prevented, as the Swahns argue, from affirming a finding of judicial estoppel at the pleading stage. Rather, we must examine the elements of the doctrine and the well-pleaded or judicially noticed facts to determine whether there was a basis for the trial court's application of the doctrine.

In a carefully worded assertion, the Swahns claim that after "exhaustive research" they have "been unable to locate a single published decision in which an appellate court has *upheld* the application of judicial estoppel at the demurrer stage." (Italics added.) While technically correct, this statement is somewhat misleading.

In *Furia v. Helm* (2003) 111 Cal.App.4th 945 [4 Cal.Rptr.3d 357], the appellate court did not *uphold* an application of judicial estoppel in the trial court because the trial court did not rely on that ground in sustaining the demurrer. (*Id.* at p. 956.) Rather, the Court of Appeal on its own *relied* on

judicial estoppel in concluding the demurrer was properly sustained without leave to amend. (*Id.* at p. 959.)

Also, in *New Hampshire v. Maine* (2001) 532 U.S. 742 [149 L.Ed.2d 968, 121 S.Ct. 1808], the United States Supreme Court granted a motion to dismiss on the ground of judicial estoppel. A motion to dismiss in federal court is the equivalent of a demurrer in California. (*Bach v. County of Butte* (1983) 147 Cal.App.3d 554, 564 [195 Cal.Rptr. 268].)

■ Accordingly, the trial court may sustain a demurrer on the ground of judicial estoppel where the facts pleaded and judicially noticed indicate as a matter of law the doctrine should be applied, i.e., that a court has adopted or accepted as true the inconsistent position.[4]

As we will show, the only such fact that is a candidate for judicial acceptance of an inconsistent position is the fact that a minor's compromise may have been granted by the trial court incident to the settlement agreement in the rescission action. However, no order approving the compromise of the minor's claim appears in the record. Moreover, the summary of the case pursuant to which the compromise was granted, if it was granted, does not clearly show a position inconsistent with that asserted in this case.

### III

#### Earlier Position Was Not Successfully Asserted

The Swahns argue that the positions they took in the two litigations were not inconsistent, and that they made claims in the malpractice action that were not raised in the rescission action.

It cannot be denied that the Swahns made inconsistent factual allegations in the two actions. In this action, for example, the Swahns allege that on August 8, 2001, Pamela Swahn told S&K that C&G was dissolved. Presumably, this should have put S&K on notice that any action against C&G would be worthless, as any award would be unrecoverable. In the rescission action, the Swahns asserted that they did not become aware until the arbitration was over (in 2003) that C&G had been dissolved. The Swahns also alleged that they "reasonably believe[d] that C&G was still in existence" until after the first phase of the arbitration concluded.

---

[4] The trial court may take judicial notice on the request of a plaintiff or a defendant of documents pertinent to the issues raised by a demurrer. (Code Civ. Proc., § 430.70; *C.R. v. Tenet Healthcare Corp.* (2009) 169 Cal.App.4th 1094, 1103 [87 Cal.Rptr.3d 424].) However, the truth of a document's contents will not be considered unless the document is a judgment, statement of decision, or order. (169 Cal.App.4th at p. 1103.)

The Swahns allege in this action that S&K "cajoled" them into settling the contract litigation "on whatever terms Tharaldson would agree to," and that they were forced to settle because they had "exhausted their financial resources." The Swahns allege S&K was negligent in failing to secure a settlement agreement containing the terms the Swahns desired, particularly the terms protecting the Swahns' cash distributions.

By contrast, in the rescission action the Swahns specifically alleged that Tharaldson and the other defendants "fraudulently induced" *them* into executing the settlement agreement through "false promises, misrepresentations and concealments."[5]

We need not determine whether these factual inconsistencies amount to different "positions," whether such different "positions" are totally inconsistent, or whether the first position in the rescission action was taken without ignorance, fraud, or mistake, because we conclude that the Swahns were not successful in asserting the first position, since the court did not adopt or approve the first position.[6]

The third *Jackson* factor requires that the party to be estopped was successful in asserting the first position. (*Jackson, supra,* 60 Cal.App.4th at p. 183.) This means not just that the party prevailed in the earlier action, but that "the tribunal adopted the position or accepted it as true . . . ." (*Ibid.*) There is no evidence in the record before us that the tribunal adopted plaintiffs' earlier position. First, while there is a petition to approve the compromise of the claim of a minor, there is no order approving the compromise. Second, even if such an order was in the record, there is no evidence the order was based on an acceptance of the truth of the plaintiffs' earlier position.

---

[5] At oral argument, the Swahns attempted to distinguish between Tharaldson's actions that fraudulently induced them into executing the settlement agreement and Tharaldson's actions that defrauded S&K. They maintained that they never alleged in the rescission action that Tharaldson fraudulently induced S&K to settle. However, the notice of rescission stated as one of the bases for rescission that Tharaldson concealed from S&K and the mediator Tharaldson's interpretation of the handwritten settlement agreement and made fraudulent representations regarding the source of the loan repayments to S&K. The notice of rescission was attached to the rescission complaint as exhibit D, pursuant to Civil Code section 1689 et seq. Civil Code section 1691 provides that to effect a rescission, a party must promptly give notice of rescission. The point of the notice requirement is to inform the party of the grounds of rescission. However, if the notice of rescission is not given, the service of the complaint in rescission shall constitute the notice. (Civ. Code, § 1691.)

[6] The Swahns do not argue that the second element of the judicial estoppel test—that the positions were taken in judicial or quasi-judicial proceedings—has not been met. Therefore, we need not consider this element, which is patently satisfied by the two judicial proceedings.

S&K argues that the Swahns took two inconsistent positions in the rescission action. First, they claimed in the rescission action that S&K obtained a "resounding victory" in the arbitration action, but claim here that the arbitration was unnecessary and meaningless because they lost their ability to pursue Tharaldson and the hotel corporations. Second, they claimed in the rescission action that Tharaldson had an ongoing scheme to defraud them and fraudulently induced them and S&K into settlement. Here, by contrast, they claim S&K pressured and cajoled them into entering into the settlement agreement.

The summary of the case submitted to the trial court with the petition to compromise the minor's claim states merely that the Swahns "prevailed in Phase I," the phase of the arbitration that "adjudicated the issue of liability," and makes no mention of the Swahns' allegations of fraud and concealment against Tharaldson. These allegations are the basis of S&K's claim of judicial estoppel, and it is difficult to imagine how the court could have accepted the truth of the allegations when it was not apprised of them.

■ The United States Supreme Court has explained the significance of the success factor in the defense of judicial estoppel in the federal courts: "Absent success in a prior proceeding, a party's later inconsistent position introduces no 'risk of inconsistent court determinations,' [citation], and thus poses little threat to judicial integrity." (*New Hampshire v. Maine, supra*, 532 U.S. at pp. 750–751 [149 L.Ed.2d at p. 978].) The court defined success in a prior proceeding as "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.' " (*Id.* at p. 750 [149 L.Ed.2d at p. 978].) While matters of state law must be resolved pursuant to state principles, we find this decision of the United States Supreme Court persuasive, and cite it for its persuasive value. (*Nadler v. Schwarzenegger* (2006) 137 Cal.App.4th 1327, 1334 [41 Cal.Rptr.3d 92].)

Two California cases, *Jogani v. Jogani* (2006) 141 Cal.App.4th 158 [45 Cal.Rptr.3d 792] (*Jogani*), and *Gottlieb v. Kest* (2006) 141 Cal.App.4th 110 [46 Cal.Rptr.3d 7], focus on the success requirement, and hold that the requirement is not met where there is no judicial acceptance of the party's position. In *Jogani*, the plaintiff asserted a partnership interest in certain family-owned partnerships, even though, as the losing defendant in two prior lawsuits, he had claimed no interest in the partnerships during his judgment debtor exams. (*Jogani*, at pp. 164–167.)

■ *Jogani* first noted that the purpose of judicial estoppel is to protect the integrity and dignity of the judicial process. (*Jogani, supra*, 141 Cal.App.4th at p. 169.) Although judicial estoppel also protects the opposing party from unfair strategy, the point of the doctrine is not the connection between the parties, but the connection between one party and the court. (*Id.* at p. 170.) Accordingly, the court stated that "[t]he factor of success—whether the court in the earlier litigation adopted or accepted the prior position as true—is of particular importance." (*Ibid.*)

The court then proceeded to conclude that the plaintiff had taken totally inconsistent positions in separate judicial proceedings, and that the positions had not been taken as the result of ignorance or mistake. (*Jogani, supra*, 141 Cal.App.4th at pp. 171–172.) Thus, all of the *Jackson* factors except success were satisfied. Nevertheless, the court refused to apply the doctrine of judicial estoppel, reasoning that the court had not considered the substance of the judgment debtor's testimony in the exam, much less adopted it or accepted it as true. (*Id.* at p. 174.) As a result, there was no risk of inconsistent court determinations, and no threat to judicial integrity. (*Ibid.*)

■ The court noted that under the rules of evidence, prior inconsistent statements, whether or not they are under oath, may be admitted to prove the truth of the matter asserted as well as for impeachment. (*Jogani, supra*, 141 Cal.App.4th at p. 174.) For this reason, " '[j]udicial estoppel is applied with caution to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement.' " (*Id.* at p. 175.) "It is . . . a well-established principle in California that a pleading in a prior civil proceeding may be offered as evidence or for the purpose of impeachment in a subsequent proceeding. [Citations.] The rationale underlying this principle is that the allegations of fact in a pleading are presumed to be those of the party, and are therefore accepted as admissions, subject to the right of the party to controvert them by showing that they were not authorized by him or were made inadvertently or under a mistake of fact." (*Fibreboard Paper Products Corp. v. East Bay Union of Machinists* (1964) 227 Cal.App.2d 675, 707 [39 Cal.Rptr. 64].) Allegations in a pleading are admissible even though the pleading is not verified by the party. (*Nungaray v. Pleasant Valley etc. Assn.* (1956) 142 Cal.App.2d 653, 667 [300 P.2d 285].) " 'When a pleading is verified by counsel and the client allows it to remain as a pleading in the case so that it contains a solemn admission of record, it should be presumed that the allegations contained therein were inserted by his authority and hence admissible against him in other actions.' " (*Ibid.*)

Thus, while we conclude the inconsistent factual assertions made in the rescission action do not amount to judicial estoppel because of the absence of judicial acceptance of an inconsistent position, such allegations are admissible evidence to support S&K's defense of the action proper.

 Some courts have concluded that in certain extreme circumstances, there need not be a judicial element to judicial estoppel. If these authorities remain valid in light of the language of *New Hampshire v. Maine, supra,* 532 U.S. at pages 750–751 [149 L.Ed.2d at page 978] (see p. 846, *ante*), this case does not present the extreme circumstances that would allow the application of judicial estoppel absent judicial acceptance.

*Jackson, supra,* 60 Cal.App.4th 171, stated in a footnote at page 183 that circumstances might warrant application of judicial estoppel even if the earlier position was not adopted by the tribunal. In *Thomas v. Gordon* (2000) 85 Cal.App.4th 113 [102 Cal.Rptr.2d 28], the court upheld a judgment based on judicial estoppel where there admittedly was no court adoption of the plaintiff's prior position. In that case, the plaintiff doctor placed funds in a corporation controlled by her girlfriend in order to avoid creditors' claims. (*Id.* at pp. 115–116.) The doctor then filed a bankruptcy petition that did not include an interest in the corporation among her assets. (*Id.* at p. 117.) After the corporation ceased doing business, the doctor sued her accountant for failure to advise her of the corporation's financial affairs. (*Id.* at p. 116.)

The court held that the situation warranted the application of the doctrine of judicial estoppel even without proof of success in the earlier bankruptcy litigation because: "Appellant brazenly admits that she transferred her most valuable asset—her income stream—to a corporation owned wholly by her paramour in order to keep it out of the hands of her creditors. She then filed for bankruptcy, clearly expecting to reclaim her funds from her trusted friend after all of her lawful debts were discharged. Not once, but three times, she signed documents under oath for filing with the bankruptcy court which claimed to list all of her assets but said nothing about any interest in Women's Health or Nationwide or the funds she allegedly believed were being held for her there. Assuming that the doctrine of judicial estoppel should be applied to an unsuccessful litigant only in the rare situation where the litigant has made an egregious attempt to manipulate the legal system, we agree with the trial court that 'this is as egregious as it gets . . . .' " (*Thomas v. Gordon, supra,* 85 Cal.App.4th at p. 119.)

*Thomas v. Gordon* "involved a brazen admission of such egregious misconduct that it presented a rare situation where judicial estoppel should be applied even though the bankruptcy court did not rely on the debtor's

nondisclosures." (*Gottlieb v. Kest, supra*, 141 Cal.App.4th at p. 147.) We do not have a similar admission of egregious misconduct in this case.

Additionally, *Thomas v. Gordon* relied in part on federal circuit court cases and "was decided before the Supreme Court emphasized the importance of the success factor in *New Hampshire*[ *v. Maine*], *supra*, 532 U.S. at pages 749–751, and *Zedner* [*v. United States* (2006)] 547 U.S. [489, 503–506,] [126 S.Ct. at pp. 1987–1988]." (*Gottlieb v. Kest, supra*, 141 Cal.App.4th at p. 147.)[7]

Another case, *Levin v. Ligon* (2006) 140 Cal.App.4th 1456 [45 Cal.Rptr.3d 560], determined that a settlement may in some instances fulfill the successful assertion requirement for judicial estoppel. Again, we question the validity of the case in light of the Supreme Court's indication in *New Hampshire v. Maine, supra*, 532 U.S. at pages 750–751 [149 L.Ed.2d at page 978], that "[a]bsent success in a prior proceeding, a party's later inconsistent position introduces no 'risk of inconsistent court determinations . . . .' " We do not understand in what sense judicial estoppel applies if the "judicial" is taken out of the equation. In any event, we cannot determine from the record before us that the settlement in this case is the type of settlement that would satisfy the success requirement as set forth in *Levin v. Ligon*.

In *Levin v. Ligon, supra*, 140 Cal.App.4th 1456, the plaintiff sued his former wife in California for a partition of financial assets held in her name. (*Id.* at p. 1459.) In the prior action, husband sued his English attorney in an English court for malpractice, which husband claimed occurred when the attorney failed to advise him that, under English law, he would lose his claim to the former wife's financial assets (known as "ancillary relief") if he remarried. (*Id.* at pp. 1460–1461.) Husband settled his malpractice suit. (*Id.* at p. 1461.) "According to the Queen's Bench Division of the High Court of Justice in England, this sum represented: ' "The difference between the amount [Levin] would have received had he been able to make an ancillary relief application under the Matrimonial Causes Act 1973 (as amended), and the sum of US \$320,000 being the amount received in his subsequent application under section 17 of the Married Women's Property Act 1882 (as amended)[,]" ' but for the negligence of [his attorney]." (*Id.* at p. 1461.)

[7] *Drain v. Betz Laboratories, Inc., supra*, 69 Cal.App.4th at page 958, also purported to follow the rule set forth in *Jackson, supra*, 60 Cal.App.4th at page 184, footnote 8, that some circumstances "may warrant application of the doctrine [of judicial estoppel] even if the earlier position was not adopted by the tribunal." However, it, too, was decided before *New Hampshire v. Maine*. The same district Court of Appeal (the Second District), albeit a different division, is responsible for the later decisions in *Jogani* and *Gottlieb v. Kest*. Both of these cases emphasized the importance of judicial acceptance of the party's position.

In determining that the settlement in that case was sufficient to satisfy the success element, the court noted that *Jackson* acknowledged that the circumstances of a case " ' "may warrant application of the doctrine even if the earlier position was not adopted by the tribunal." ' [Citation.]" (*Levin v. Ligon, supra*, 140 Cal.App.4th at p. 1477.) The court concluded that "[t]he pivotal issue is whether it can be established that the party succeeded in the first position or that the position was a basis or important to the settlement." (*Ibid.*) The court was able to determine that Levin had triumphed by inducing his former attorney to surrender, thus establishing that Levin's claim the attorney had been negligent was a basis for the settlement. (*Id.* at p. 1478.) The English court indicated that the amount of the settlement represented the value of the assets he would have received absent his former attorney's negligence. (*Id.* at p. 1461.) Thus, the California court could establish that the husband's successful position in the settlement was that he had no right to share his former wife's financial assets, whereas the point of the California action was to assert his rights in the same assets.

In this case, the circumstances of the settlement are not so clear, and we cannot determine from the face of the pleadings and the facts of which we may take judicial notice whether the Swahns' allegations of fraud and concealment were the basis of the settlement. The only evidence of the settlement consists of the Swahns' allegation in the complaint against S&K that they ultimately resolved all disputes with Tharaldson by way of a settlement, and the petition to approve the compromise of the claim of Trevor Swahn, a minor.

As previously explained, the summary of the case submitted to the trial court for the minor's compromise does not mention the Swahns' allegations of fraud and concealment against Tharaldson et al., but instead merely states that Tharaldson "refused to perform under the terms of the purported settlement and refused to execute formal settlement documentation . . . ."

The summary of the case further states that dismissal of the arbitration was a condition of the settlement of the case, and that the assets of the hotel corporations had been sold. The summary goes on to detail the shares owned by Swahn in each of the hotel corporations, shares that were issued prior to the sale. The summary states that "[t]he Tharaldson Interests disputed the vested status of the Swahn Interests' Stock in the Stock Interest Hotel Corporations. The Swahn Interests contend that they own a larger percentage interest in the ten (10) Stock Interest Hotel Corporations and that the Swahn Interests own stock in a number of additional hotels."

Thus, the summary of the case contained in the petition to approve minor's compromise implies that the case was settled not because Tharaldson et al. surrendered to the claims of fraud and concealment, but because the parties

finally compromised their underlying contractual dispute. The implication is supported by the fact that the dismissal of the original arbitration was a condition of the settlement, and the fact that the parties' claims regarding the Swahns' ownership interest in the hotel corporations are the same claims asserted in the original breach of contract action.

Further, the settlement agreement occurred after the case was ordered to mediation before the same mediator who had mediated the dispute over the breach of the development agreement. The rescission complaint advanced seven reasons to rescind the settlement agreement other than the reason based upon the fraudulent inducement relating to the terms of the loan repayment. If any of these allegations were the basis of the settlement, judicial estoppel would not apply, assuming a settlement could satisfy the success factor.

## IV

### Causation

The trial court also sustained the demurrer to the Swahns' causes of action for professional negligence, breach of contract, and breach of fiduciary duty on the ground that no causation could be alleged. The trial court's reasoning was that the Swahns were precluded from asserting that, but for S&K's malpractice, they would have obtained a better result than the $6 million settlement they received. The trial court concluded the Swahns were precluded from making this assertion because of the doctrine of judicial estoppel. Since we have determined that judicial estoppel was not a proper ground on which to sustain the demurrer, we likewise conclude it was not a proper basis for a finding that no causation could be alleged.

S&K also claims the complaint fails to state a cause of action because the Swahns must plead and prove to a legal certainty that but for the alleged malpractice it would have obtained a better result. The proper standard is: "To show damages proximately caused by the breach, the plaintiff must allege facts establishing that, '*but for* the alleged malpractice, it is more likely than not the plaintiff would have obtained a more favorable result.' [Citations.]" (*Charnay v. Cobert* (2006) 145 Cal.App.4th 170, 179 [51 Cal.Rptr.3d 471].)

The Swahns have met this standard by alleging that S&K was negligent in pursuing arbitration against C&G, a dissolved corporation, but failing to pursue the court action against the hotel corporations. The Swahns alleged that but for S&K's actions, it would not have pursued an arbitration which,

though successful, was meaningless because the only defendant bound by the award was a dissolved corporation. They were damaged in the amount of the attorney fees expended in the arbitration and the reduced amount of the settlement. Essentially, the Swahns alleged that if S&K had pursued the hotel corporations in court, the Swahns would have been successful (as evidenced by the favorable arbitration award) and they would have recovered damages for breach of the original development contract, which were greater than what they agreed to under the mediated settlement agreement. These allegations are sufficient to satisfy the pleading requirements for causation.

Whether the Swahns will be able to prove malpractice in general or damages in particular remains to be determined.

V

Uncertainty

The trial court sustained the demurrer to the entire complaint on the ground of uncertainty without stating its reasons. S&K's demurrer argued the complaint was uncertain because several causes of action were improperly joined. It argued that the first cause of action contained at least four separate causes of action: (1) professional negligence, (2) breach of fiduciary duty of loyalty, (3) breach of fiduciary duty of confidentiality, and (4) breach of contract.

Assuming this argument has merit, "a demurrer upon the ground of improper joinder of causes of action in the same complaint should not be sustained without leave to amend when it appears that the defect can be cured by amendment." (*Lord v. Garland* (1946) 27 Cal.2d 840, 854 [168 P.2d 5].) This appears to be a pleading error that can be corrected, if in fact there is error.

S&K argues the burden was on the Swahns to show how the complaint could be amended. This requirement is so we may assess whether or not the trial court abused its discretion by denying leave to amend. (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 890 [6 Cal.Rptr.2d 151].) In this case, we are not faced with a complaint that lacks the ultimate facts required to establish a cause of action. The claim was that the first cause of action improperly joined several causes of action. If this leads to uncertainty, it is easily corrected, and it was an abuse of discretion to deny leave to amend.

## DISPOSITION

The judgment of dismissal is reversed. Plaintiffs shall recover their costs on appeal.

Nicholson, J., and Cantil-Sakauye, J., concurred.

A petition for a rehearing was denied April 29, 2010, and respondents' petition for review by the Supreme Court was denied June 17, 2010, S182562.