Filed 6/3/22 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| BERT FILTZER,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>MARIO E. ERNST et al.,<br><br>    Defendants and Respondents. | B308484<br><br>(Los Angeles County<br>Super. Ct. No. BC592433)<br><br>ORDER MODIFYING OPINION<br><br>[No change in the judgment] |

IT IS ORDERED that the opinion filed in the above-captioned matter on June 3, 2022, be modified as follows:

1. On page 6, line 12 of the paragraph that begins with "The Settlement Agreement", the sentence is deleted and replaced with:

"Therefore, when the parties executed the Forbearance Agreement on February 19, 2019, all debt was already past due."

This modification effects no change in the judgment.

_____

STRATTON, P. J.        GRIMES, J.        HARUTUNIAN, J.*

_____

*       Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| BERT FILTZER, | B308484 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC592433) |
| v. | |
| MARIO E. ERNST et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Lia Martin, Judge. Affirmed.

Levene, Neale, Bender, Yoo & Brill; Levene, Neale, Bender, Yoo & Golubchick, Kurt E. Ramlo and Todd M. Arnold for Plaintiff and Appellant.

Neufeld Marks, Paul S. Marks, Yuriko M. Shikai and David M. Safvati for Defendants and Respondents.

_____

Appellant Bert Filtzer appeals from a Minute Order and Order on Motion for Entry of Stipulated Judgment. Filtzer sued Respondents Mario E. Ernst, Teri L. Ernst, and Ricardo's on the Beach (collectively Ernst) for breach of contract based upon Ernst's failure to repay a promissory note. The parties then entered into a settlement agreement (Settlement Agreement), and subsequently into an agreement they both refer to as the "Forbearance Agreement." The parties' dispute centers on whether the Forbearance Agreement completely satisfied Ernst's obligations under the Settlement Agreement. Filtzer contends that the trial court erred by (1) interpreting the Forbearance Agreement to be a full release of Ernst's obligations under the Settlement Agreement; (2) interpreting the Forbearance Agreement to have a duration "in perpetuity" rather than in effect for a "reasonable" amount of time under California Supreme Court precedent; and (3) failing to apply judicial estoppel to bar Ernst from asserting that the Forbearance Agreement was anything other than a brief forbearance of the Settlement Agreement.

The trial court's ruling was proper. We affirm.

## BACKGROUND

On August 25, 2015, Filtzer filed a complaint for breach of contract and money had and received against Ernst, based upon Ernst's failure to repay a $250,000 promissory note. On October 23, 2015, the parties entered into the Settlement Agreement providing that Ernst owed Filtzer $288,720.67 in principal and interest, plus $36,217.00 in attorneys' fees and costs. The Settlement Agreement detailed a schedule for Ernst to pay Filtzer monthly, starting November 1, 2015, and ending on November 1, 2018. It also provided for three "Settlement

2

Payment Forebearance[s]," and stated that "[u]se of any or all of the three (3) Payment Forbearance months shall not extend the November 1, 2018 due date for the Final Payment." The parties further agreed that Filtzer would enter a stipulated judgment, attached to the Settlement Agreement, if:

"Defendants fail to timely deliver any of the Settlement Payments, unless Defendants have validly utilized a Payment Forbearance pursuant to the terms of this Agreement . . . However, upon Defendants' failure to timely deliver any of the Settlement Payments, unless Defendants have validly utilized a Payment Forbearance pursuant to the terms of this Agreement, Plaintiff shall be authorized to file the Stipulated Judgment via ex parte notice or noticed motion." (Italics omitted.)

Subsequently, on February 19, 2019, during mediation (and months after the final payment was due in 2018 under the Settlement Agreement), the parties executed the Forbearance Agreement, which states in relevant part:

"Filtzer agrees to forbear from taking action to obtain entry of the stipulated judgment in the R. Filtzer v. Mario Ernst et al. action (Case No. BC592433) and/or to enforce the same, provided that, by no later than 5:00 p.m. Pacific Time on March 19, 2019, Mario Ernst delivers to counsel for [Filtzer] . . . (1) a certified check or a wire in the amount of one hundred and fifty thousand dollars ($150,000.00) . . . and (2) a list of Mario Ernst's assets and liabilities stated under penalty of perjury. In the event Mario Ernst fails to timely provide the payment or list of assets and liabilities referenced herein, Bert Filtzer shall be immediately entitled to take any and all action to obtain entry of the stipulated judgment in the R. Filtzer v. Mario Ernst et al. action (Case No. BC592433) and/or to enforce the same." Ernst met

3

these obligations by making a payment of $150,000 and providing the required documents on March 19, 2019 before 5:00 p.m. Pacific Time.

Meanwhile on February 28, 2019, in a different case between the same parties, Filtzer filed an ex parte motion to attach the assets of Ernst. On March 1, 2019, Ernst argued in his opposition to that motion that, among other things, the motion should be denied because the parties had "reached a (brief) forbearance agreement." That same day, after a hearing, a trial court denied Filtzer's motion, writing that Filtzer failed to show "irreparable harm."

Finally, on February 21, 2020, a year after the payment was made under the Forbearance Agreement, Filtzer filed a Motion for Entry of Stipulated Judgment, claiming that Ernst still owed him $190,547.02. On August 27, 2020, after a hearing, the trial court denied Filtzer's motion on the basis that the Forbearance Agreement was intended to be in "full satisfaction" and "release" of the balance due under the Settlement Agreement. Filtzer appealed.

## DISCUSSION

On appeal, we apply a de novo standard of review to interpret a contract. (*Hanna v. Mercedes-Benz USA, LLC* (2019) 36 Cal.App.5th 493, 507; *City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 393–394.) This standard applies even where conflicting inferences may be drawn from undisputed extrinsic evidence, "unless the interpretation turns upon the credibility of extrinsic evidence." (*Parsons v. Bristol Development Company* (1965) 62 Cal.2d 861, 865; accord, *Garcia v. Truck Ins. Exchange* (1984) 36 Cal.3d 426, 439.) Here, there is

4

no conflict in the credibility of extrinsic evidence, and we review the trial court's interpretation of the contract de novo.

On the issue of judicial estoppel, we independently review whether judicial estoppel is proper on the record evidence. "If the elements for judicial estoppel are present, whether to apply the doctrine is within the trial court's discretion, which we review for an abuse of discretion." (*DotConnectAfrica Trust v. Internet Corp. for Assigned Names and Numbers* (2021) 68 Cal.App.5th 1141, 1158.)

## I. The Trial Court Did Not Err in Holding That the Parties Intended the Forbearance Agreement to Be in Full Satisfaction of Ernst's Outstanding Debt in the Settlement Agreement

We first examine Filtzer's argument the trial court erred in its interpretation of the Forbearance Agreement when it held that it was intended by the parties to be in full satisfaction and release of the Settlement Agreement. Filtzer argues that the Forbearance Agreement was only meant to be a temporary forbearance of the Settlement Agreement, such that he still had a right to entry of the stipulated judgment under the Settlement Agreement.

When a contract is written, "the intention of the parties is to be ascertained from the writing alone, if possible." (Civ. Code, § 1639.) In construing a contract, we ascertain the objective intent of the contracting parties at the time of the agreement. (*Gilkyson v. Disney Enterprises, Inc.* (2021) 66 Cal.App.5th 900, 916.) If a contract's language is clear and unambiguous, intent is determined solely by the language within the four corners of the contract. (*Brown v. Goldstein* (2019) 34 Cal.App.5th 418, 432.) " 'The court generally may not consider extrinsic evidence of any

5

prior agreement,' " but may do so when the contract is susceptible to more than one interpretation. (*Ibid*.) We must also assume that the parties did not intend any of the language in the contract to be surplus, redundant, or to give rise to an absurd outcome. (*Eith v. Ketelhut* (2018) 31 Cal.App.5th 1, 19 (*Eith*); Civ. Code, § 1641.) The Forbearance Agreement does not explicitly state whether it was intended to be in full satisfaction of the Settlement Agreement, and it is ambiguous as to this key question. Accordingly, we look to extrinsic evidence and apply the foregoing canons of construction to ascertain the parties' objective intent.

The Settlement Agreement, when read together with the Forbearance Agreement, supports the trial court's conclusion that the parties intended the Forbearance Agreement to be in full satisfaction of Ernst's outstanding debt. The Settlement Agreement set forth a four-part monthly payment schedule with a deadline for *all* payments by November 1, 2018. It further allowed for three forbearance periods, but stated that the final payment deadline could not be extended: "Payment Forbearance months shall not extend the November 1, 2018 due date for the Final Payment." There is no other provision in the Settlement Agreement, or any other record evidence, that provides for an extension of the November 1, 2018 deadline. Therefore, when the parties executed the Forbearance Agreement on February 19, 2020, all debt was already past due. Filtzer could have immediately moved for entry of the stipulated judgment under the Settlement Agreement. Of course, doing so would have resulted in a judgment on paper, but not cash in hand. Instead, Filtzer agreed to the Forbearance Agreement. Nowhere does the Forbearance Agreement extend the November 1, 2018 deadline,

6

nor does it refer to any kind of payment beyond the single payment of $150,000.

Reading the plain text of the Forbearance Agreement to avoid superfluous language and/or absurd outcomes, (*see Eith, supra,* 31 Cal.App.5th at p. 19; Civ. Code, § 1641), the clause providing that Filtzer can enter a stipulated judgment if "Ernst fails to timely provide the payment or list of assets and liabilities" by March 19, 2019 would be unnecessary and give rise to a redundant and absurd outcome if it was not intended to be in full satisfaction and release of the Settlement Agreement. Filtzer's interpretation would mean that Ernst agreed to a contract that allowed Filtzer to enter the stipulated judgment if Ernst failed to timely meet his obligations under the Forbearance Agreement *and also if he did timely meet them* because if the balance due under the Settlement Agreement carried over after payment under the Forbearance Agreement, then Ernst remained in breach after payment of the $150,000. As the trial court recognized, under Filtzer's reading, he could have filed the stipulated judgment on the same day Ernst met his obligations under the Forbearance Agreement. There would be no purpose in saying that the stipulated judgment entry was conditioned on Ernst failing to pay the $150,000 if Filtzer was entitled to enter the judgment whether or not Ernst paid the $150,000. Filtzer received $150,000 in cash, without the time, expense, and uncertainty of trying to collect on a money judgment. Ernst received a reduction in the debt, and avoidance of a recorded money judgment. The trial court's interpretation of the contracts rendered the terms consistent with the contract language and normal motivations of creditors and debtors.

Filtzer claims use of the word "forbear" in the Forbearance Agreement means that the Forbearance Agreement itself was intended to be temporary. We reject this claim. The Forbearance Agreement provides for a month-long forbearance concerning a newly created obligation: the payment of $150,000 by March 19, 2019. It was accurate and appropriate to describe Filtzer as forbearing from proceeding with entry of judgment for 30 days, since Ernst's debt was not eliminated during that time. But since, as explained above, we read the intent of the Forbearance Agreement to resolve the debt that had become due under the Settlement Agreement, there was nothing left to "forbear" once the $150,000 was paid. Although we (and the parties) refer to it for consistency as the "Forbearance Agreement," the parties simply titled the actual document "Agreement," undermining Filtzer's argument that temporary forbearance was the only purpose.

Filtzer also urges us to look to evidence that mediation was ongoing, asserting that the parties did not intend the Forbearance Agreement to satisfy all obligations under the Settlement Agreement, but was meant only as a temporary forbearance, because mediation was not over. The record does provide for a subsequent mediation date of March 29, 2019. Ernst argues, however, that the mediation involved multiple lawsuits between the parties. Filtzer does not argue otherwise in his reply brief, and the record does establish that there were multiple cases between the parties that were part of the ongoing mediation. We do not find that the existence of a single, subsequent mediation date, possibly in regard to a different case, changes our interpretation of the Forbearance Agreement in light

of the plain text and absurd consequences noted above if the Settlement Agreement was still in effect.

We acknowledge that the Forbearance Agreement is lacking in typical "settlement in full" language. But it is also lacking in contrary language about there being any payments due in the future. It is this ambiguity that necessitates examining the contract language and surrounding circumstances, and which causes us to agree with the trial court's interpretation of what the parties intended.

We conclude that the parties intended the Forbearance Agreement to be in full satisfaction of Ernst's debt if Ernst complied by March 19, 2019.

## II. The Forbearance Agreement Did Not "Forbear" the Settlement Agreement for a "Reasonable," Limited Period of Time

Filtzer further argues that because the Forbearance Agreement is *silent* as to the period it "forbears" the Settlement Agreement, it should be construed as lasting for only a "reasonable," and not permanent, length of time under Supreme Court precedent in *Consolidated Theaters, Inc. v. Theatrical Stage Employees Union* (1968) 69 Cal. 2d 713, 718 (*Consolidated Theaters).* For the reasons in part I. above we disagree, and Filtzer's cited case law following this precedent does not change this conclusion.

*Consolidated Theaters* held that "[i]n construing contracts which call for . . . forbearance, but which contain no *express* term of duration, it is first necessary to determine whether the intention of the parties as to duration can be *implied* from the nature of the contract and the circumstances surrounding it." (*Consolidated Theaters, supra,* 69 Cal.2d at p. 725.) Only if

9

"the nature of the contract and the totality of surrounding circumstances give no suggestion as to any ascertainable term," does "the law usually impl[y] that the term of duration shall be at least a reasonable time . . . ." (*Id.* at p. 727.)

Unlike in *Consolidated Theaters*, the Forbearance Agreement does provide a definite period of forbearance, between the date of execution up until March 19, 2019. It is, however, silent, in general, as to its relation to the Settlement Agreement. Even if the Forbearance Agreement could be construed as forbearing the Settlement Agreement for some unspecified amount of time, under *Consolidated Theaters* we would look to the nature of the contract and to extrinsic evidence to ascertain intention, as we did in concluding that the Forbearance Agreement was intended to resolve the balance due under the Settlement Agreement. For these reasons, the trial court did not err in failing to interpret the Forbearance Agreement as lasting only a "reasonable" period.

## III. The Trial Court Did Not Abuse Its Discretion in Failing to Apply the Doctrine of Judicial Estoppel

Filtzer also argues that Ernst's reference to a "brief forbearance agreement," in its briefing in a separate case between the parties means that Ernst is judicially estopped from arguing that the Forbearance Agreement was anything but brief or is a "release or full settlement agreement." Before the trial court, Ernst argued that his reference to a "brief" forbearance in his opposition to Filtzer's motion to attach was to the length of the half-page Forbearance Agreement itself, but also could be read as referring to the month-long period between the execution of the agreement and the March 19, 2019 deadline. The trial court did not address Filtzer's judicial estoppel argument.

10

We apply the doctrine of judicial estoppel when " ' "(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake." ' " (*CytoDyn of New Mexico, Inc. v. Amerimmune Pharmaceuticals, Inc.* (2008) 160 Cal.App.4th 288, 299, fn. 9; *The Swahn Group, Inc. v. Segal* (2010) 183 Cal.App.4th 831, 842.)

Ernst argues that the third element of the judicial estoppel doctrine is not met because the trial court that ruled on the Ex Parte Motion to Attach did not accept as true his reference to the word "brief" in describing the Forbearance Agreement, and instead held that the motion should be denied due to a lack of "irreparable harm." We agree. There is no record evidence that either the trial court immediately below or the one that considered the Ex Parte Motion to Attach Assets ever relied in any way on Ernst's reference to the Forbearance Agreement as "brief." (See generally *Levin v. Ligon* (2006) 140 Cal.App.4th 1456, 1477 ["The pivotal issue is whether it can be established that the party succeeded in the first position or that the position was a basis or important to the [decision]".)

Regardless, this is not the kind of egregious case where judicial estoppel should be applied. Judicial estoppel is an "equitable doctrine," so its application, even where all elements of the doctrine are met, is "discretionary." (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 422.) The doctrine must be "applied with caution" and is "limited to egregious circumstances." (*Jogani v.*

*Jogani* (2006) 141 Cal.App.4th 158, 170, 175, 177.) It is an " ' "extraordinary remedy to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice." [Citation.]' " (*Daar & Newman v. VRL International* (2005) 129 Cal.App.4th 482, 491.)

We see no miscarriage of justice resulting from Ernst arguing on March 1, 2019 that the Ex Parte Motion to Attach should be denied for various reasons, including that the parties had agreed to a "brief" forbearance, and then also arguing, after the March 19, 2019 deadline in the Forbearance Agreement, that it was a full settlement and satisfaction of debt under the Settlement Agreement after the brief forbearance. " ' "The doctrine of judicial estoppel . . . is invoked to prevent a party from changing its position over the course of judicial proceedings when such positional changes have an adverse impact on the judicial process. . . . Judicial estoppel is 'intended to protect against a litigant playing "fast and loose with the courts." ' " ' " (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 181.) Such circumstances do not exist here.

Moreover, Filtzer has not met his burden in showing that collateral estoppel should be applied " ' " ' to prevent a party from changing its position over the course of judicial proceedings when such positional changes have an adverse impact on the judicial process. . . .' " ' " (*Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 449; see also *Ayala v. Dawson* (2017) 13 Cal.App.5th 1319, 1326 [holding that the burden is on party asserting doctrine].) There is no evidence of adverse impact on Filtzer or on the judicial process, nor does Filtzer even try to argue one.

12

In sum, the trial court did not abuse its discretion in failing to invoke the equitable doctrine of judicial estoppel.

**DISPOSITION**

The order is affirmed.  Respondents shall recover their costs on appeal.

**CERTIFIED FOR PUBLICATION**


HARUTUNIAN, J.*


We concur:



STRATTON, P. J.



GRIMES, J.

---

\*        Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.