Filed 12/15/21

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| AWANA RING, | |
| Plaintiff and Appellant, | E075232 |
| v. | (Super.Ct.No. CIVDS1901772) |
| RICHARD M. HARMON et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of San Bernardino County. Wilfred J. Schneider, Jr., Judge. Reversed with directions.

Law Office of Adam Dolce and Adam Dolce for Plaintiff and Appellant.

Law Offices of Jeffrey A. Coleman and Jeffrey A. Coleman for Defendants and Respondents.

Can a person who is both personal representative of a probate estate and a beneficiary of that estate maintain in her individual capacity a claim for financial elder abuse (or any other claims) based on allegations that she was manipulated into taking actions as personal representative that damaged her interests as a beneficiary? The trial court ruled that she may not, sustaining the respondents' demurrer on the view that the claims must be brought in the person's capacity as the personal representative.

1

The plaintiff here, however, does not merely allege that respondents were involved in an arms-length transaction with the estate, serving as broker and lender for a loan secured by real property administered as part of the estate. She alleges fraud that targeted her in her individual capacity, using probate procedures and her role as the estate's personal representative as an instrument to deprive her of her inheritance. Specifically, she alleges that respondents engaged in a scheme, together with others, to cause probate proceedings to be initiated, to arrange for her to be appointed as personal representative of the estate, and then to induce her to enter into a loan on behalf of the estate on predatory terms and to facilitate the diversion of loan funds both to respondents and to those other parties. On these facts, which we hope can correctly be described as unusual, we find the plaintiff's financial elder abuse claim was adequately pleaded. We therefore reverse the judgment.

## I. BACKGROUND

Plaintiff and appellant Awana Ring was approximately 80 years old when her daughter Vickie Atiyeh died in November 2015.[1] In her will, Atiyeh left a house to Ring. Roy Scott Robb (Scott Robb) and Zachary Robb are a son and an adult grandson of Ring, and father and son to one another. The Robbs are both named as defendants in this action, but are not party to this appeal. The defendants and respondents here are Richard

---

[1] In the petition for probate filed in October 2016 regarding Atiyeh's estate, Ring's age is listed as 81, and the complaint alleges that Ring was "in her eighties" during the relevant time period.

2

M. Harmon and the corporation TSG Financial Corp. (TSG); Ring alleges that TSG is an alter ego of Harmon.

According to Ring, the Robbs, working together with respondents, in essence used probate proceedings as a means to extract equity from the house to use for their own purposes. Scott Robb, in particular, in accordance with a plan designed through discussions with Harmon, caused a probate proceeding to be initiated regarding Atiyeh's estate, orchestrated Ring's appointment as personal representative of the estate, and then had Ring use that authority to enter into a loan to the estate secured by the house, with respondents serving as broker and lender. In addition to the loan having predatory terms, some of the loan funds were used to pay fees to respondents, and some were disbursed to an estate account, but then withdrawn by the Robbs for their own purposes.

More specifically, Ring alleges that at the time the probate petition was filed, the house was worth approximately $400,000, and it secured liens of approximately $110,000. She alleges she was induced to enter into a $200,000 loan from respondents on behalf of the estate, on terms requiring interest only payments at a rate of 10.99 percent and totaling $109,900.20 over five years, followed by a balloon payment of $201,831.67, with additional penalties if there were to be a default. The proceeds of the loan were distributed as follows: (1) approximately $137,000 to pay off debt secured by the house[2]; (2) approximately $18,000 to respondents in the form of various fees; (3)

_____

[2] This sum includes not only the home's first mortgage, but also an additional loan, styled as an "advance" on expected inheritance, separately arranged by Scott Robb after Atiyeh's death.

3

$1029.08 to a title company; (4) $1,260 to an escrow company (also a defendant and allegedly an alter ego of Harmon, though not party to this appeal) and; (5) $41,894.24 in net loan proceeds, deposited to a bank account of Atiyeh's estate that had been opened by Scott Robb. Shortly after the loan proceeds were distributed, the Robbs withdrew the loan proceeds deposited in the estate's bank account.

In the operative second amended complaint in this lawsuit, Ring asserted claims only in her individual capacity. The complaint includes nine causes of action asserted against respondents: (1) "Predatory Lending"; (2) "Breach of Fiduciary Duty"; (3) "Recission or Reformation"; (4) "Constructive Fraud"; (5) "Elder Abuse (Financial)"; (6) "[Business and Professions] Code §§ 10240 et seq."; (7) "[Business and Professions] Code § 17200 et seq."; (8) "Breach of Implied Covenants"; and (9) "Civil Conspiracy/Aiding and Abetting."

The trial court sustained Harmon and TSG's demurrer to the complaint with leave to amend, finding that all the claims alleged were properly asserted only in Ring's capacity as personal representative of her daughter's estate. Briefly put, Ring did not file an amended complaint, and the trial court entered judgment in respondents' favor.[3]

---

[3] Ring filed a motion for reconsideration of the order sustaining the demurrer, citing authorities that she had not previously brought to the trial court's attention. The trial court denied the motion.

Ring then filed an ex parte application seeking to file a proposed third amended complaint that again asserted claims in her individual capacity. It seems she interpreted the scope of her leave to amend to be limited to the filing of a new complaint asserting causes of action against Harmon and TSG only in her capacity as personal representative of Atiyeh's estate, but her proposed third amended complaint reasserted her causes of action in her individual capacity and included several new causes of action. The trial

*[footnote continued on next page]*

4

In this appeal, Ring contests the dismissal of her first eight causes of action as to respondents; she concedes that her ninth cause of action for "Civil Conspiracy/Aiding and Abetting" was "properly dismissed."

## II.  DISCUSSION

### A.  *Standard of Review*

On appeal from a judgment based on an order sustaining a demurrer, we assume the truth of the facts alleged in the complaint.  (*Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 528.)  In addition, we consider judicially noticed matters. (*Committee for Green Foothills v. Santa Clara Board of Supervisors* (2010) 48 Cal.4th 32, 42.)  We accept all properly pleaded material facts but not contentions, deductions, or conclusions of fact or law.  (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.)  We determine de novo whether the complaint alleges facts sufficient to state a cause of action under any legal theory.  (*Committee for Green Foothills*, *supra*, at p. 42.)  We read the

court interpreted its order differently, expressing consternation that Ring already had leave to file the complaint she sought to file, so the application seemed to the court a "monumental waste of court resources."  The court denied the ex parte application, suggesting that Ring just file the proposed third amended complaint.

Instead of doing so, Ring sought relief in this court, filing a petition for writ of mandate requesting that we determine "whether [she] had standing to pursue her claims in an individual capacity."  (Case No. E074595.)  We summarily denied the petition without expressing any opinion regarding the merits of the trial court's order sustaining Harmon and TSG's demurrer to the second amended complaint.

Ring never did file her proposed third amended complaint.  After all these proceedings, the trial court entered an order dismissing Harmon and TSG, and this appeal followed.

complaint as a whole and its parts in context to give the complaint a reasonable interpretation.

"'[W]hen a demurrer is sustained with leave to amend, but the plaintiff elects not to amend, it is presumed on appeal that the complaint states the strongest case possible.'" (*Zolly v. City of Oakland* (2020) 47 Cal.App.5th 73, 82.) In that circumstance, "unlike when a demurrer is sustained without leave to amend, we determine only whether the plaintiff stated a cause of action, and not whether the plaintiff might be able to do so." (*Lyles v. Sangadeo-Patel* (2014) 225 Cal.App.4th 759, 764.)

B. *Analysis*

Generally, an executor or other personal representative is the person authorized to maintain or defend an action on behalf of a probate estate. (*Smith v. Cimmet* (2011) 199 Cal.App.4th 1381, 1391 (*Smith*); see Prob. Code, § 9820; Code Civ. Proc., § 369, subd. (a).) There are limited circumstances where the beneficiary of the estate has standing to sue a third party to seek redress for an injury to the estate. Probate Code section 9654 provides that a beneficiary may bring suit to recover possession of or quiet title to property. Also, appellate courts have occasionally recognized "special circumstances" where it is appropriate to allow the beneficiary to pursue an action because the personal representative cannot or will not act. (*Bohn v. Smith* (1967) 252 Cal.App.2d 678, 680- 681 (*Bohn*).) For example, in *Olson v. Toy* (1996) 46 Cal.App.4th 818 (*Olson*), one of the defendants was both personal representative of a probate estate and the trustee of a trust that the beneficiaries of the probate estate contended should be declared invalid. (*Id.*

6

at pp. 821, 824.)  The Court of Appeal found the beneficiaries had standing, reasoning that the defendant "could hardly be expected on behalf of the estate to initiate an action to declare invalid the trust which she administers as trustee." (*Id.* at p. 824.)

Here, however, there is no reason why Ring could not, in her capacity as personal administrator of Atiyeh's estate, pursue most of the claims she has asserted against respondents, since only the estate is the borrower under the allegedly predatory loan.  She does not seek to recover possession of or quiet title to property.  There is no conflict of interest analogous to the one identified in *Olson* as a special circumstance justifying the beneficiary bringing suit in place of the conflicted personal representative.  Nor is there any other apparent reason why Ring could not or would not assert, in her capacity as personal representative of the estate, her various claims arising directly from injury to the estate by the loan transaction (and only indirectly related to injury to her interests as beneficiary).  Indeed, in her briefing on appeal, Ring represents that she *is* pursuing her claims in her capacity as personal representative of the estate in another forum, namely, in the probate matter regarding Atiyeh's estate.  It follows that Ring does not have standing to bring such claims also in her individual capacity, and those causes of action were properly dismissed.

Ring's cause of action for financial elder abuse, however, differs.  No authority supports the notion that the personal representative of a probate estate, acting in that capacity, has standing to bring an elder abuse claim on behalf of a beneficiary of that estate.  Rather, an elder can bring an elder abuse claim on his or her own behalf, as can

7

someone acting as the *elder*'s representative (not the estate's).[4]  (See *Tepper v. Wilkins* (2017) 10 Cal.App.5th 1198, 1208-1209 [conservator or guardian ad litem may bring elder abuse claim on elder's behalf, as can someone acting with elder's consent through "a power of appointment"].)  The trial court was mistaken to suggest that Ring could bring a claim that she suffered financial elder abuse in her capacity as personal representative of the estate.

A beneficiary who is not also the personal representative of the estate would have a remedy against that representative for damages caused by any financial elder abuse. Generally, a beneficiary of an estate may seek to recover against the estate's personal representative if the representative has entered a transaction that benefits third parties at the expense of the estate and its beneficiaries.  The Probate Code provides that the representative may be surcharged by the probate court for losses caused by such a breach of fiduciary duty.  (Prob. Code, § 9601, subd. (a); *Estate of Kampen* (2011) 201 Cal.App.4th 971, 988.)  The beneficiary may also have an independent cause of action for damages against the representative.  (Prob. Code, § 9603.)  Where the beneficiary and the personal representative of the estate are the same person, however, neither the Probate

---

[4] The Welfare and Institutions Code defines the sort of "representative" that may bring a financial elder abuse claim on behalf an elder.  (Further undesignated statutory references are to the Welfare and Institutions Code.)  This lawsuit, for example, was brought per section 15610.30, subdivision (d)(2) on Ring's behalf by one of Ring's sons, Michael Crossno, acting under a power of attorney.  If Ring were deceased, the statute describing who would have standing to bring a financial elder abuse claim on her behalf would be section 15657.3, instead of section 15610.30, subdivision (d).

8

Code's surcharge provisions nor an independent suit for damages could provide the beneficiary any relief.

The gravamen of Ring's elder abuse claim is that respondents wrongfully induced her (an elder), in her capacity as personal representative of Atiyeh's estate, to enter into a transaction that damaged not only the estate, but also her individual interests. As discussed, this is not a claim she could bring against respondents in her role as personal administrator, nor is there a third-party administrator of the estate who could be held responsible. In our view, this is the sort of special circumstance that justifies allowing an heir to maintain a cause of action in her own name. (See *Bohn*, *supra*, 252 Cal.App.2d at pp. 680-681 ["An heir may maintain an action *against anyone, except an executor or administrator,* for possession of or to quiet title to the real property of a decedent *and if special circumstances justify such, for any other purpose or respecting any other property*" (italics added)].) We hold that where an elder is both beneficiary and personal representative of a probate estate, the elder has standing to bring a claim of financial elder abuse in his or her individual capacity based on allegations that the defendants wrongfully deprived him or her of property by means of a transaction with the estate. We conclude, therefore, that Ring has standing to assert in her individual capacity her claim that respondents are liable for financial elder abuse accomplished by means of the loan transaction with Atiyeh's estate. We turn, then, to the issue of whether she pleaded facts sufficient to state such a cause of action.

The Elder Abuse and Dependent Adult Civil Protection Act (the Act) (§ 15600 et seq.) was enacted to protect elders, defined as "any person residing in this state, 65 years of age or older" (*id.*, § 15610.27), and dependent adults from abuse and neglect. (*Mahan v. Charles W. Chan Ins. Agency, Inc.* (2017) 14 Cal.App.5th 841, 858 (*Mahan*).) The Act protects against both "[p]hysical abuse" and "[f]inancial abuse." (§ 15610.07, subds. (a)(1) & (3).) Financial abuse, which is what Ring alleges, occurs when an elder is wrongfully "deprived of any property right, including by means of an agreement, donative transfer, or testamentary bequest, regardless of whether the property is held directly or by a representative of an elder . . . ." (§ 15610.30, subd. (c).) A claim for financial elder abuse can be asserted not only against a person or entity who wrongfully deprived an elder of any property right, but also one who assisted another in doing so.[5] (§ 15610.30, subds. (a)(1), (2); see *Wood v. Jamison* (2008) 167 Cal.App.4th 156, 164-165 (*Wood*) [defendant committed financial elder abuse both directly, by taking a fee paid through loan proceeds, and by assisting another in taking loan proceeds].) Where there is room for debate regarding the meaning of the statutory text of the Act, it should be "'liberally construed on behalf of the class of persons it is designed to protect,'" and in

---

[5] More precisely, under section 15610.30, subdivision (a), "'[f]inancial abuse' of an elder" occurs when a person or entity "[t]akes, secretes, appropriates, obtains, or retains real or personal property" of an elder "for a wrongful use or with intent to defraud, or both" (*id.*, subd. (a)(1)) or "by undue influence" (*id.*, subd. (a)(3)). Financial abuse of an elder also includes assisting another who "[t]akes, secretes, appropriates, or retains real or personal property of an elder" for wrongful use, with intent to defraud, or by undue influence. (*Id.*, subds. (a)(2), (3).) The phrase "takes, secretes, appropriates, obtains, or retains . . . real or personal property of an elder" is defined in subdivision (c) of the same section, by the language we quote above.

10

a manner compatible with its "overall remedial purpose." (*Mahan*, *supra*, 14 Cal.App.5th at pp. 860-861.)

Respondents contest whether Ring adequately pleaded that she, in her individual capacity, was "deprived of any property right . . . regardless of whether the property is held directly or by a representative of an elder . . ." in the meaning of section 15610.30, subdivision (c). We therefore must address two questions: Did Ring plead facts showing that she, in her individual capacity, has "any property right" cognizable under section 15610.30, and was she deprived of it by respondents?[6] We answer both of these questions in the affirmative.

"'A common idiom describes property as a "bundle of sticks"—a collection of individual rights which, in certain combinations, constitute property.'" (*Union Pacific Railroad Co. v. Santa Fe Pacific Pipelines, Inc.* (2014) 231 Cal.App.4th 134, 157 (*Union Pacific*), quoting *United States v. Craft* (2002) 535 U.S. 274, 278; see also *Bounds v. Superior Court* (2014) 229 Cal.App.4th 468, 479 (*Bounds*) ["Case law recognizes that property rights are a complex 'bundle of rights'"].) Some of the sticks in the bundle for Atiyeh's house passed to Ring in her individual capacity immediately upon Atiyeh's death, but not all of them. Specifically, title to the house vested in her, and she obtained a still-inchoate or contingent right to possess and control the house eventually, depending on the outcome of the administration of Atiyeh's estate. In the meantime, however, the

---

[6] Respondents have not argued that Ring's allegations are insufficient with respect to wrongful use, intent to defraud, or undue influence, so we do not discuss those aspects of a financial elder abuse claim in any detail.

11

house remained "subject to administration" under the Probate Code and thus "subject to the rights of beneficiaries, creditors, and other persons as provided by law." (Prob. Code, § 7001 [quote]; see *id.* § 7000 ["Subject to [Probate Code] Section 7001, title to a decedent's property passes on the decedent's death to the person to whom it is devised in the decedent's last will"]; *Olson*, *supra*, 46 Cal.App.4th at p. 825 ["When a person dies, title to his or her property vests in the heirs or devisees, *subject to administration*" (italics added)].) It is the personal representative of the estate, and not the beneficiary, who "has the right to, and shall take possession or control of, all the property of the decedent" pending administration of the estate. (Prob. Code, § 9650, subd. (a)(1).) The circumstance that Ring also serves as the personal representative of the estate does not change the analysis regarding her rights in her individual capacity. (*Estate of Curry* (1969) 274 Cal.App.2d 502, 503 ["'The fact that a representative is an heir or a beneficiary under the will does not give him the right to deal with the property of the estate other than as representative until it has been distributed to him. In such a case, his possession up to the time of distribution is in his representative capacity'"].)

Respondents argue that Ring, in her individual capacity, has no rights cognizable under section 15610.30 relating to the house. They interpret the statute to require that to maintain a claim for financial elder abuse, Ring would have to show either that "the property is held directly" by her in her individual capacity or that it is held by her "representative," that is, by her "conservator, trustee, or other representative of [her] estate" or "[a]n attorney-in-fact . . . who acts within the authority of the power of

12

attorney." (§ 15610.30, subds. (c), (d).) Ring cannot make that showing, according to respondents, because she does not hold the house directly, and the personal representative of Atiyeh's estate is not *Ring's* representative, even if Ring herself serves in that capacity for the estate.

Respondents' interpretation of the last clause of section 15610.30, subdivision (c) is in tension, however, with the language earlier in the same subdivision that broadly defines financial abuse of an elder to include the wrongful deprivation of "any property right." The dependent clause that ends section 15610.30, subdivision (c) is not phrased in a manner that suggests it is working a substantive change or narrowing of the category of "any property right," but rather is more naturally read as expanding or emphasizing the breadth of the category. That is, the clause is "*regardless of whether* the property is held directly or by a representative of an elder" (*ibid.* (italics added)), rather than, for instance, ". . . but only if the property is held directly or by a representative of an elder."

In our view, respondents misapply the statutory language. It is not the house itself that is the "property" that must be held either by Ring or her representative for her to come within section 15610.30, subdivision (c). Rather, it is Ring's *interest* in the house. As discussed above, that interest passed to her, in her individual capacity, upon Atiyeh's death. Although Ring did not immediately receive all the sticks in the proverbial bundle of individual rights relating to the house, she nevertheless held some of them, and those

13

rights "'constitute property.'"[7] (*Union Pacific*, *supra*, 231 Cal.App.4th at p. 157.) That property has value even before the administration of Atiyeh's estate is complete.[8] Relatedly, if Ring were to die before the administration of Atiyeh's estate is completed, her interest in the house would become part of her *own* estate if probate proceedings were initiated. (See *Estate of Adams* (1957) 148 Cal.App.2d 319, 323 ["The word 'estate' when used in connection with probate proceedings encompasses the totality of the assets and liabilities of the decedent, including all manner of property, real and personal, choate or inchoate, corporeal or incorporeal"].)

Further, Ring adequately pleaded that respondents have "deprived" her of her property in a manner that is cognizable under the Elder Abuse Act. As alleged, the house remains under the administration of Atiyeh's estate, but burdened by substantially more debt than before respondents manipulated Ring into entering the loan transaction on behalf of the estate. On its face, that transaction reduced the value of Ring's interest as a beneficiary; whatever the value of a beneficiary's interest in a house that has been left to

---

[7] As noted above, this lawsuit was brought on Ring's behalf by her representative, acting under a power of attorney. Our record does not speak to whether Ring's real and personal property, and in particular her interests as a beneficiary of Atiyeh's estate, are still held by her directly, or whether she also has a representative of one sort or another holding her property for her. The final clause of section 15610.30, subdivision (c), however, clarifies that it does not matter "whether the property is held directly or by a representative of an elder."

[8] Even inchoate interests have a fair market value and can be sold or used to obtain a loan. According to Ring's allegations, Scott Robb demonstrated this by obtaining an "advance" on expected inheritance that was part of the debt retired by some of the funds loaned by respondents.

14

her by will but remains subject to administration in probate, the value of that interest is lessened if the house is newly burdened by an additional $200,000 in debt. That reduction in value alone is enough to support the conclusion that Ring, in her individual capacity, has been deprived of a cognizable property right. (See *Bounds*, *supra*, 229 Cal.App.4th at p. 480 [transfer of title is not necessary to demonstrate an elder has been deprived of cognizable right under the Act; it is enough to show "adverse financial impact" that "significantly interferes with [elder's] rights to use the realty as they see fit," for example, by "impair[ing] [the elder's] ability . . . to use it as security to obtain a loan on reasonable and commercially acceptable terms"].)

Further, that reduction in value worked directly to the benefit of respondents, in the form of loan funds paid to respondents as fees, as well as interest and other costs that are to be paid on the loan (to say nothing of the possibility that they may take possession of the house through foreclosure after a default, and the loan proceeds misappropriated by the Robbs with the assistance of respondents). (See *Wood*, *supra*, 167 Cal.App.4th at pp. 164-165 [finding defendant committed elder abuse both by receiving fees paid through loan proceeds and by assisting another in misappropriating loan proceeds]; *Mahan*, *supra,* 14 Cal.App.5th 864 [finding "deprivation" of "property" where respondents, through "manipulation and use of [a trust] as an instrument . . . managed to separate the [elders] from their money"].) As a practical matter, moreover, it may be that Ring would have to contribute her own individual funds to service that additional estate debt to ever take possession of the house in her individual capacity, given that the estate does not have

15

assets to cover the debt. (See *id.* at p. 864 [finding deprivation of property rights under Act because elders "had to reach into their pockets and sell assets to provide more cash" to trust as a result of defendants' financially abusive actions].) Alternatively, if the house has to be sold by the estate to cover its debts, Ring would receive a reduced distribution, if anything at all. However the matter is framed, in our view, Ring adequately pleaded in her individual capacity that respondents "deprived" her of "property" within the meaning of section 15610.30, subdivision (c).[9]

It seems likely, if not inevitable, that the damages Ring alleges in her individual capacity under her financial elder abuse cause of action overlap substantially with the damages she alleges in a separate lawsuit on behalf of the estate.[10] "Certainly, the adverse financial consequences flowing from the Respondents' actions cannot be awarded twice in damages," both to Atiyeh's estate and to Ring. (*Mahan*, *supra*, 14 Cal.App.5th at p. 865.) Respondents will be "entitled to object to any effort at double

---

[9] In briefing, respondents attempt to distinguish *Mahan* and *Bounds* on the ground that they involved property held in trust, rather than property under administration in probate. Trust and probate estates, however, are similar in that neither are legal entities, but are instead """simply a collection of assets and liabilities,""" held by someone with a fiduciary responsibility to deal with it. (See *Smith*, *supra*, 199 Cal.App.4th at p. 1390.) We are not persuaded that these cases' reasoning is inapplicable in the probate estate context, at least on the points for which we cite them.

[10] The damages may not, however, overlap entirely with sums that are recoverable by the estate. For example, section 15657.5 includes a mandatory award of attorney fees to a plaintiff who proves financial elder abuse. Also, Probate Code section 859 provides for an award of double damages in at least some financial elder abuse cases. (See *Keading v. Keading* (2021) 60 Cal.App.5th 1115, 1129-1130 [discussing split of authority regarding whether award of double damages under Probate Code section 859 requires a separate finding of bad faith].)

recovery." (*Ibid.*)  But this is an issue that involves the "scope of the relief available," a matter to be addressed on another day, not "whether a claim for relief has been stated in the first instance," the question now before us.  (*Ibid.*)  For the reasons stated above, we conclude that Ring's cause of action for financial elder abuse adequately stated a claim for relief.[11]

Ring asks that we not only reverse the judgment and hold that the court erred in sustaining respondents' demurrer to the second amended complaint, but that we also instruct the court to permit her previously proposed third amended complaint to be filed. We decline the request.  It is well established that the """*trial court* has wide discretion in allowing the amendment of any pleading . . . . """ (*Melican v. Regents of University of California* (2007) 151 Cal.App.4th 168, 175 (italics added).)  The trial court is in a better position than this court to consider all of the factors relevant to that exercise of discretion. (See *ibid*. [discussing factors].)  If, after this opinion, Ring still wishes to amend her pleadings (whether in the form previously proposed, or by means of a new proposed amended complaint) she may file a motion with the trial court requesting permission to do so.  We express no opinion on how the trial court should exercise its discretion with respect to such a request.

---

[11] Ring has requested that we take judicial notice of certain deposition testimony, as well as a deposition exhibit consisting of the trust deed that was a part of the loan transaction at issue here.  Both the deposition excerpts and the exhibit are irrelevant to our analysis of the viability of Ring's asserted causes of action, so the request for judicial notice is denied.

## III.  DISPOSITION

The judgment is reversed and the matter is remanded with directions that the trial court (1) vacate its order sustaining respondents' demurrer to Ring's second amended complaint; (2) enter a new and different order overruling the demurrer with respect to the second amended complaint's fifth cause of action for "Elder Abuse (Financial)" and sustaining it without leave to amend with respect to the remaining causes of action as asserted against respondents; and (3) conduct further proceedings not inconsistent with this opinion.  Ring is awarded her costs on appeal.

CERTIFIED FOR PUBLICATION

RAPHAEL_____
J.

We concur:

SLOUGH_____
Acting P. J.

MENETREZ_____
J.

18